1  SHANNON LISS-RIORDAN (SBN 310719)
   (sliss@llrlaw.com)
2  THOMAS FOWLER (*pro hac vice* forthcoming)
   (tfowler@llrlaw.com)
3  LICHTEN & LISS-RIORDAN, P.C.
4  729 Boylston Street, Suite 2000
   Boston, MA 02116
5  Telephone:     (617) 994-5800
6  Facsimile:     (617) 994-5801

7  *Attorneys for Plaintiffs Emmanuel Cornet,*
   *Justine De Caires, Grae Kindel, Alexis Camacho,*
8  *and Jessica Pan, on behalf of themselves*
9  *and all others similarly situated*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| EMMANUEL CORNET, JUSTINE DE CAIRES, GRAE KINDEL, ALEXIS CAMACHO, AND JESSICA PAN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TWITTER, INC.<br><br>Defendant | Case No. 3:22-cv-06857<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND**<br><br>1. BREACH OF CONTRACT<br>2. BREACH OF CONTRACT (THIRD-PARTY BENEFICIARY)<br>3. PROMISSORY ESTOPPEL<br>4. VIOLATION OF WARN ACT (29 U.S.C. §§ 2101 *ET SEQ.*)<br>5. VIOLATION OF CALIFORNIA WARN ACT (CAL. LAB. CODE §§ 1400 *ET SEQ.*)<br>6. DECLARATORY JUDGMENT ACT, 28 U.S.C. §§ 2201-02 |

## I. INTRODUCTION

1. Plaintiffs Emmanuel Cornet, Justine De Caires, Grae Kindel, Alexis Camacho, and Jessica Pan file this Class Action Complaint against Defendant Twitter, Inc. ("Twitter"), on their own behalf and on behalf of thousands of other Twitter employees, challenging the company's breach of contract with its workforce regarding benefits and severance, asserting claims of promissory estoppel, and challenging the company's violation of the federal Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 *et seq.* (the "WARN Act"), as well as the California WARN Act, Cal. Lab. Code § 1400 *et seq.* (the "California WARN Act").

2. As described further below, multi-billionaire Elon Musk recently purchased Twitter and immediately began laying off half its workforce. Twitter employees had been promised that, should layoffs occur after the sale of the company, they would be entitled to the same benefits and severance that employees had previously received. However, following Musk's purchase of the company, Twitter reneged on this agreement.

3. In addition, Twitter began laying off employees without providing all of them with the required notice under the federal and California WARN Acts.

4. Twitter employees had also been promised that, following the sale of the company, they could continue working remotely for at least a year. However, after Musk's purchase of the company, he ordered that remaining employees would have to return to working at the office (with few exceptions).

5. Twitter has stated that laid off employees would receive severance agreements this week. Plaintiffs are very concerned that employees will be asked to sign away their rights without notice that they have legal claims to additional benefits and severance and that these legal claims have already been filed on their behalf.

6. Indeed, another company owned by Elon Musk, Tesla, recently engaged in mass layoffs without notice. That company attempted to obtain releases from laid off employees

without informing them of their rights under the federal or California WARN Acts. A federal court subsequently ordered the company to provide employees notice of the claims that had been filed on their behalf. See Lynch v. Tesla, Inc., 2022 WL 42952953, at *6 (W.D. Tex. Sept. 16, 2022).

7. Plaintiffs file this action, bringing claims of breach of contract, promissory estoppel, and violation of the federal and California WARN Acts, and seek to ensure that Twitter not solicit releases of claims of any employees without informing them of the pendency of this action and their right to pursue these claims.

8. Plaintiffs seek immediate injunctive relief, as well as a declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, on behalf of themselves and all similarly situated employees.

## II. **PARTIES**

9. Plaintiff Emmanuel Cornet is an adult resident of San Francisco, California, where he worked for Twitter from January 2021 until his layoff on November 1, 2022.

10. Plaintiff Justine De Caires is an adult resident of San Francisco, California, where they have worked as an employee of Twitter assigned to Twitter's San Francisco office. On November 4, 2022, Twitter informed Plaintiff De Caires that they have been laid off effective, January 4, 2023.

11. Plaintiff Grae Kindel is an adult resident of Medford, Massachusetts, where they have worked as an employee of Twitter assigned to Twitter's office in Cambridge, Massachusetts. On November 4, 2022, Twitter informed Plaintiff Kindel that they have been laid off effective January 4, 2023.

12. Plaintiff Alexis Camacho is an adult resident of Honolulu, Hawaii, where they have worked as an employee of Twitter assigned to Twitter's headquarters in San Francisco, California.

3
FIRST AMENDED CLASS ACTION COMPLAINT

13. Plaintiff Jessica Pan is an adult resident of Alameda, California, where she has worked as an employee of Twitter assigned to Twitter's San Francisco office. On November 4, 2022, Twitter informed Plaintiff Pan that she has been laid off effective January 4, 2023.

14. Plaintiffs bring this lawsuit as a Rule 23 class action on behalf of all affected Twitter employees across the United States

15. Defendant Twitter, Inc. ("Twitter") is a Delaware corporation, headquartered in San Francisco, California.

### III. JURISDICTION

16. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 2104(a)(5).

17. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiffs' state law claims, because those claims derive from a common nucleus of operative facts with Plaintiffs' federal claims.

18. This Court has personal jurisdiction over Twitter, as it is headquartered in this District and conducts substantial business operations in this District.

### IV. STATEMENT OF FACTS

19. Twitter is a social media company that employs thousands of people across the United States.

20. In April 2022, it was announced that multi-billionaire Elon Musk would be purchasing the company.

21. Following this announcement, many employees raised concerns regarding the company's policies following this anticipated acquisition, including concerns of possible mass layoffs.

22. In order to allay employees' concerns and try to prevent them from leaving Twitter to work at other companies, Twitter made various promises to employees.

23. One of the promises was that employees would be able to continue working remotely, for at least a year after Musk's acquisition of the company.

24. Another of the promises was that, if there were layoffs, employees would receive benefits and severance at least as favorable as the benefits and severance that Twitter previously provided to employees.

25. These promises were communicated to employees orally (including at periodic "all-hands" meetings) and in writing by Twitter's management, including its former CEO, human resources personnel, and others.

26. The promise regarding severance pay and benefits was also included in Twitter's merger agreement with Musk and companies that would serve as the vehicles for the acquisition. This merger agreement included a provision that stated that, for at least a year after the acquisition became effective, Twitter would "provide severance payments and benefits to each Continuing Employee whose employment is terminated during such period that are no less favorable than those applicable to the Continuing Employee" prior to the acquisition.

27. This promise that severance pay and benefits would remain at least as favorable as they were prior to Musk's acquisition of the company was also communicated by Twitter to its employees in writing, including through distribution of a Frequently Asked Questions (FAQs) document.

28. Employees, including the named plaintiffs, reasonably relied on these promises and maintained their employment at Twitter, rather than seeking job opportunities elsewhere. They did so to their detriment.

29. Following the purchase of the company by Elon Musk in late October 2022, Twitter openly reneged on these promises.

30. Musk immediately began a mass layoff that has been reported to have affected half of Twitter's workforce. See Kate Conger, Ryan Mac, and Mike Isaac, Confusion and

5
FIRST AMENDED CLASS ACTION COMPLAINT

*Frustration Reign as Elon Musk Cuts Half of Twitter's Staff*, NEW YORK TIMES (November 4, 2022), https://www.nytimes.com/2022/11/04/technology/elon-musk-twitter-layoffs.html.

31. Following his purchase of the company, Musk also announced that he was ending Twitter's remote work policy and that employees who were not laid off would need to begin working at company offices, with few exceptions.

32. Twitter did not give 60 days advance written notice to all employees who were being laid off, as required by the federal WARN Act, and for employees in California, the California WARN Act. Nor were all affected employees given pay in substitution for federal or California WARN Act notice.

33. For example, Plaintiff Cornet was let go as part of the mass layoff, on November 1, 2022. Twitter did not provide 60 days advance written notice (or any advance notice at all) to Plaintiff Cornet regarding his layoff. Nor did Twitter offer pay to Plaintiff Cornet in lieu of the notice.

34. Since Musk's purchase of the company, other employees have also been laid off without receiving 60 days (or any) advance written notice or any offer of pay in lieu of the notice.

35. For a number of employees who were laid off, Twitter did provide 60 days notice, and it informed them that they would receive severance pay in the amount of one month's pay. Plaintiffs De Caires, Kindel, and Pan were informed they would receive one month's pay as severance, following their termination date on January 4, 2023.

36. However, Twitter's previous policy had provided for greater severance pay and benefits for laid off employees. The previous policy had provided for at least two months' pay (or more, depending on the employee's length of service), bonus plan compensation, cash value of equity that would have vested within three months from the separation date, and a cash contribution for health care continuation.

37. While Musk attempted to claim that the pay employees would receive during the two months between their notification of layoff and their final termination date was severance pay, this pay is not severance pay. Twitter appears to have offered this period of payment to some employees (including Plaintiffs De Caires, Kindel, and Pan) in an attempt to comply with the federal or California WARN Act.

38. Employees (including Plaintiffs Cornet, De Caires, Kindel, and Pan) had reasonably relied to their detriment on Twitter's earlier promise that employees subject to layoff after Musk's purchase of the company would receive at least as favorable severance pay and benefits as they would have received prior to his purchase of the company. Based on that promise, they did not seek or obtain employment elsewhere during the uncertain time period prior to Musk's purchase of the company.

39. Likewise, employees who were not laid off following Musk's purchase of the company also reasonably relied to their detriment on the Twitter's earlier promise that they could continue such benefits as working remotely after his purchase of the company. Plaintiff Camacho reports to the San Francisco office but has resided in Honolulu, Hawaii, which has been possible based upon Twitter's allowance for remote work. Employees such as Camacho are now subject to harm based upon Musk's sudden abolition of that remote work policy and also have been harmed due to having passed up the opportunity to search for other jobs when the job market was more favorable.

40. Like many employees who were subject to layoffs shortly after Musk's purchase of the company, Plaintiffs De Caires, Pan, and Kindel were locked out of their company accounts on November 3, 2022, and then provided with notice on November 4, 2022, that they were being laid off as of January 4, 2023. The documentation that Twitter provided to these Plaintiffs stated that their severance package would only consist of a month's base pay following their termination, and that they would only receive the severance if they signed a release of all claims.

41. Twitter has stated that it will distribute these releases to laid off employees beginning this week (the week of November 7, 2022). Plaintiffs are concerned that, absent court intervention, Twitter will seek releases from laid off employees without informing them of their rights, Twitter's contractual, promissory, and statutory obligations, or the pendency of this case. Plaintiffs therefore seek immediate relief to ensure that Twitter does not violate the law and then seek to obtain releases from its thousands of employees who do not have notice of their rights or the pendency of the claims brought here on their behalf.

42. Indeed, Elon Musk engaged in similar behavior with respect to mass layoffs conducted earlier this year at another company he owns, Tesla. In the summer of 2022, Tesla engaged in mass layoffs without providing advanced written notice as required by the federal and California WARN Acts. Former Tesla employees brought a suit against Tesla for these violations. See Lynch et al. v. Tesla, Inc., Civ. Act. No., 1:22-cv-00597-RP (W.D. Tex.). Tesla sought to obtain full releases of all federal and California WARN Act claims in exchange for small severance payments for less than the employees were legally entitled to, as alleged in the federal lawsuit. (Tesla offered one or two weeks' severance pay, rather than the 60 days' pay required to satisfy the federal and California WARN Acts). See Lynch, 2022 WL 4295295, at *1-4.) A federal court ruled that Tesla's conduct was "misleading because [the separation agreements] fail to inform potential class members of this lawsuit and the rights that they are potentially giving up under the WARN Act." Id. at *4.

## COUNT I
## Breach of Contract

As set forth above, from approximately April 2022 through October 2022, Twitter repeatedly informed employees, in consideration for the employees' continued willingness to work for Twitter, that they would receive the same benefits and severance pay following Elon Musk's purchase of the company, including being able to work remotely (for at least a year following the acquisition), as well as (in the event of layoffs) receiving severance pay and benefits that were no less favorable than what Twitter employees previously received.  However, following Musk's purchase of the company, Twitter breached that contract.  It has now announced that employees may no longer work remotely (with few exceptions).  It has also informed employees that they will receive severance packages that are less favorable than those Twitter provided to employees prior to the acquisition.

## COUNT II
## Breach of Contract (Third-Party Beneficiary)

Twitter has also breached its contractual obligations under the merger agreement through which Elon Musk purchased the company.  Twitter employees were third-party beneficiaries to the agreement, which stated that, for at least a year following the acquisition, Twitter would continue to provide its employees who were terminated with severance packages that were no less favorable than the severance packages that were provided to terminated employees prior to the acquisition. Twitter has now informed employees that they will receive severance packages that are less favorable than those Twitter provided to employees prior to the acquisition.  Twitter is thus liable for breach of a contract for which Plaintiffs and other employees are third-party beneficiaries.

## COUNT III
### Promissory Estoppel

From approximately April 2022 through October 2022, Twitter repeatedly informed employees that they would receive the same benefits and severance pay following Elon Musk's purchase of the company, including being able to work remotely (for at least a year following the acquisition), as well as (in the event of layoffs) receiving severance pay and benefits that were no less favorable than what Twitter employees previously received.  In reasonable reliance on these promises, Plaintiffs and other employees continued to work for Twitter, rather than looking for and accepting other job opportunities.  However, following Musk's purchase of the company, Twitter reneged on these promises.  It has now announced that employees may no longer work remotely (with few exceptions).  It has also informed employees that they will receive severance packages that are less favorable than those Twitter provided to employees prior to the acquisition. Thus, Plaintiffs and other employees were harmed by their reliance on these promises, including that they have lost the opportunity to obtain other employment, when the job market was more favorable.

## COUNT IV
### Federal WARN Act

Plaintiffs and other employees have been entitled to the rights, protections, and benefits provided under the federal WARN Act, 29 U.S.C. § 2101 et. seq. 24. Twitter was, and is, subject to the notice and back pay requirements of the federal WARN Act because Twitter is a business enterprise that employed 100 or more employees, excluding part-time employees, and/or, employed 100 or more employees who in the aggregate work at least 4,000 hours per week (exclusive of overtime), as defined in the WARN Act. 29 U.S.C. §§ 2101(1)(A) and(B).  Twitter is engaged in conducting mass layoffs but has not provided all affected employees with the required notice under the federal WARN Act.

## COUNT V
### California WARN Act

Plaintiffs and other employees who have worked for Twitter out of California have been entitled to the rights, protections, and benefits provided under the California WARN Act, Cal. Lab. Code § 1400 *et seq.*  Twitter was, and is, subject to the notice and back pay requirements of the California WARN Act because Twitter is a business enterprise that employed 75 or more employees, as defined in the California WARN Act, Cal. Lab. Code § 1400(a).  Twitter is engaged in conducting mass layoffs but has not provided all affected employees with the required notice under the California WARN Act.

## COUNT VI
### Declaratory Judgment Act, 28 U.S.C. §§ 2201-02

An actual controversy of sufficient immediacy exists between the parties as to the concern by Plaintiffs that Twitter should be prohibited from circumventing the requirements of the federal and California WARN Act, as well as its obligations under the contracts and promises described herein.  Plaintiffs seek a declaratory judgment and an injunction prohibiting Twitter from soliciting employees to sign separation agreements that release their claims asserted herein (including for breach of contract, promissory estoppel, and violations of the federal and California WARN Acts), without first informing them of their rights under these statutes and common law doctrines, the pendency of this case filed on their behalf, and Plaintiffs' counsel's contact information.

## JURY DEMAND

Plaintiffs request a trial by jury on their claims.

WHEREFORE, Plaintiffs request that this Court enter the following relief:

a. Declare and find that the Defendant is liable to Plaintiffs and other similarly situated Twitter employees as the result of Defendant's breach of its contracts with its employees;

b. Declare and find that the Defendant is liable to Plaintiffs and other and other similarly situated Twitter employees as third-party beneficiaries, as the result of Defendant's breach of its merger agreement;

c. Declare and find that the Defendant is liable to Plaintiffs and other and other similarly situated Twitter employees under the doctrine of promissory estoppel;

d. Declare and find that the Defendant has violated the federal WARN Act, 29 U.S.C. § 2101 *et seq.* and the California WARN Act, Cal. Lab. Code §§ 1400 *et seq.*;

e. Certify this case as a class action;

f. Enter declaratory relief and an injunction enjoining Twitter from seeking releases of claims asserted herein from employees without first informing them of their rights under the law, the pendency of this lawsuit, and contact information for Plaintiffs' counsel;

g. Award compensatory damages, in an amount according to proof;

h. Award pre- and post-judgment interest;

i. Award reasonable attorneys' fees, costs, and expenses; and

j. Award any other relief to which the Plaintiffs and other Twitter employees may be entitled.

Respectfully submitted,

EMMANUEL CORNET, JUSTINE DE CAIRES, GRAE KINDEL, ALEXIS CAMACHO, AND JESSICA PAN, on behalf of themselves and all others similarly situated,

By their attorneys,


 /s/ Shannon Liss-Riordan
Shannon Liss-Riordan, SBN 310719
Thomas Fowler (*pro hac vice* forthcoming)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Email:  sliss@llrlaw.com; tfowler@llrlaw.com

Dated:       November 8, 2022