1  MORGAN, LEWIS & BOCKIUS LLP
   Eric Meckley, Bar No. 168181
2  eric.meckley@morganlewis.com
   Brian D. Berry, Bar No. 229893
3  brian.berry@morganlewis.com
   Ashlee N. Cherry, Bar No. 312731
4  ashlee.cherry@morganlewis.com
   One Market
5  Spear Street Tower
   San Francisco, CA  94105-1596
6  Tel:    +1.415.442.1000
   Fax:    +1.415.442.1001
7
   Attorneys for Defendant
8  TWITTER, INC.

9

10                    UNITED STATES DISTRICT COURT

11                  NORTHERN DISTRICT OF CALIFORNIA

12                      SAN FRANCISCO DIVISION

13

14 | EMMANUEL CORNET, JUSTINE DE | Case No. 3:22-cv-06857-JD
   | CAIRES, GRAE KINDEL, ALEXIS |
15 | CAMACHO, AND JESSICA PAN, on behalf | **DEFENDANT TWITTER, INC.'S**
   | of themselves and all others similarly situated, | **NOTICE OF MOTION AND MOTION**
16 | | **TO COMPEL ARBITRATION AND**
   | Plaintiffs, | **STRIKE AND/OR DISMISS CLASS**
17 | | **CLAIMS**
   | vs. |
18 | | **MEMORANDUM OF POINTS AND**
   | TWITTER, INC., | **AUTHORITIES**
19 | |
   | Defendant. | Date:      December 29, 2022
20 | | Time:      10:00 a.m.
   | | Judge:     Hon. James Donato
21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

TWITTER'S MTC ARBITRATION AND
STRIKE CLASS CLAIMS
CASE NO. 3:22-CV-06857-JD

1

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

2

**PLEASE TAKE NOTICE** that on Thursday, December 29, 2022, at 10:00 a.m. or as

3

soon thereafter as may be heard in Courtroom 11 of this Court, located at 450 Golden Gate

4

Avenue, San Francisco, California 94102, Defendant Twitter, Inc. ("Twitter"), will and hereby

5

does move this Court for an Order compelling Plaintiffs Emmanuel Cornet, Justine de Caires,

6

Grae Kindel, Alexis Camacho, and Jessica Pan (collectively "Plaintiffs") to arbitrate the claims

7

alleged in this action on an individual basis and to strike and dismiss Plaintiffs' alleged class

8

action claims.  Each named Plaintiff clearly and unequivocally agreed to arbitrate any

9

employment-related disputes with Twitter on an individual basis only.  In contravention of their

10

agreements, Plaintiffs have alleged employment-related claims in a putative class action against

11

Twitter.  Because Plaintiffs have refused to abide by their arbitration agreements, Twitter must

12

seek relief from the Court.  The arbitration agreement, including its class action waiver provision,

13

is valid, binding, and legally enforceable under the Federal Arbitration Act ("FAA").  9 U.S.C. §§

14

1 *et seq.*; *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1616, 1632 (2018).  As a result, the Court

15

should compel Plaintiffs to arbitrate their claims on an individual basis, and the Court should

16

strike and/or dismiss their class claims.

17

This Motion is based on this Notice of Motion and Motion, the accompanying

18

Memorandum of Points and Authorities, the Declaration of Fidelma Callaghan and all exhibits

19

attached thereto, the evidence to which the Court may take judicial notice, the record in this

20

action, and any other evidence as may be presented by Twitter at or before the hearing on this

21

Motion.

22

Dated: November 21, 2022                    MORGAN, LEWIS & BOCKIUS LLP

23

24

By   */s/ Eric Meckley*

25

Eric Meckley
Brian D. Berry

26

Ashlee N. Cherry
Attorneys for Defendant

27

TWITTER, INC.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

TWITTER'S MTC ARBITRATION AND
STRIKE CLASS CLAIMS
CASE NO. 3:22-CV-06857-JD

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................................. 1

II.   RELEVANT FACTUAL BACKGROUND ........................................................... 1

     A.    Plaintiffs Entered Into a Binding Dispute Resolution Agreement with Twitter. ....................................................................................................... 1

     B.    The Relevant Terms of the Dispute Resolution Agreement. ..................... 3

     C.    Despite Their Agreement to Arbitrate on an Individual Basis Only, Plaintiffs Filed a Putative Class Action in This Court. ............................ 6

III.   ARGUMENT ....................................................................................................... 6

     A.    The Court Must Compel Plaintiffs to Arbitration on an Individual Basis ............. 7

         1.    The Plaintiffs Assented to the Agreement Both by Signing It and by Remaining Employed for 30 Days Without Opting Out............................. 7

         2.    The Agreement Encompasses the Claims Alleged in the FAC. ................. 9

         3.    The Class Action Waiver is Enforceable. ................................................. 10

         4.    The Delegation Clause Is Enforceable ...................................................... 11

     B.    The Agreement Is Enforceable As to All Plaintiffs. ................................. 12

         1.    The Agreement Is Not Procedurally Unconscionable.............................. 13

         2.    The Agreement Is Not Substantively Unconscionable. ........................... 14

IV.   CONCLUSION ................................................................................................... 15

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

TWITTER'S MTC ARBITRATION AND
STRIKE CLASS CLAIMS
3:22-CV-06857-JD

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*24 Hour Fitness, Inc. v. Superior Court,*
   66 Cal.App.4th 1199 (1998)..................................................................... 12

*Allied-Bruce Terminix Cos.,*
   513 U.S.115 S.Ct. 834.............................................................................. 6

*Am. Express Co. v. Italian Colors Rest.,*
   570 U.S. 228 (2013) ................................................................................. 10

*Armendariz v. Foundation Health Psychare Services, Inc.,*
   24 Cal. 4th 83 (2000) ........................................................... 12, 13, 14, 15

*AT&T Mobility LLC v. Concepcion,*
   563 U.S. 333 (2011) ................................................................................. 10

*Baltazar v. Forever 21, Inc.,*
   62 Cal. 4th 1237 (2016) ........................................................................... 12

*Beckman v. Zuffa LLC,*
   No. CV215570MWFAGRX, 2021 WL 5445464 (C.D. Cal. Nov. 15, 2021) ..................... 7, 8

*Brennan v. Opus Bank,*
   796 F.3d 1125 (9th Cir. 2015).................................................................. 6

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.,*
   207 F.3d 1126 (9th Cir. 2000).................................................................. 7, 9

*Circuit City Stores v. Ahmed,*
   283 F.3d 1198 (9th Cir. 2002).................................................................. 13

*Citizens Bank v. Alafabco, Inc.,*
   539 U.S. 52 (2003) ................................................................................... 6

*Davis v. Nordstrom, Inc.,*
   755 F.3d 1089 (9th Cir. 2014).................................................................. 7

*Dean Witter Reynolds, Inc. v. Byrd,*
   470 U.S. 213 (1985) ................................................................................. 6

*Dean Witter Reynolds, Inc. v. Superior Court,*
   211 Cal.App.3d 758 (1989)...................................................................... 13

*Epic Sys. Corp. v. Lewis,*
   138 S. Ct. 1612 (2018). ........................................................................... 6, 10

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

TWITTER'S MTC ARBITRATION AND
STRIKE CLASS CLAIMS
CASE NO. 3:22-CV-06857-JD

*Espejo v. S. California Permanente Med. Grp.*,
  246 Cal.App.4th 1047 (2016)........................................................................................... 7

*Ferguson v. Countrywide Credit Industries, Inc.*,
  298 F.3d 778 (9th Cir. 2002)......................................................................................... 12

*First Options of Chicago, Inc. v. Kaplan*,
  514 U.S. 938 (1995) ................................................................................................ 7, 11

*Gilmer v. Interstate/Johnson Lane Corp.*,
  500 U.S. 20 (1991) ....................................................................................................... 13

*Jacobson v. Snap-on Tools Company*,
  No. 15-CV-02141-JD, 2015 WL 8293164 (N.D. Cal. Dec. 9, 2015) (Donato,
  J.)................................................................................................................................. 11

*Johnmohammadi v. Bloomingdale's, Inc.*,
  755 F.3d 1072 (9th Cir. 2014)....................................................................................... 11

*Jones-Mixon v. Bloomingdale's, Inc.*,
  No. 14-cv-01103-JCS, 2014 WL 2736020 (N.D. Cal. June 11, 2014) ..................................... 8

*Kim v. Tinder, Inc.*,
  2018 WL 6694923 (C.D. Cal. July 12, 2018) ...................................................................... 6

*Kinney v. United HealthCare Servs., Inc.*,
  70 Cal. App. 4th 1322 (1999)........................................................................................ 13

*Lacour v. Marshalls of CA, LLC*,
  No. 20-CV-07641-WHO, 2021 WL 1700204 (N.D. Cal. Apr. 29, 2021) ....................... 10, 11

*Lang v. Skytap, Inc.*,
  347 F.Supp.3d 420 (N.D. Cal. 2018) .............................................................................. 12

*Lewis v. UBS Fin. Servs. Inc.*,
  818 F. Supp. 2d 1161 (N.D. Cal. 2011) .......................................................................... 11

*Louis v. Healthsource Global Staffing, Inc.*,
  No. 22-CV-02436-JD, 2022 WL 4960666 (N.D. Cal. Oct. 3, 2022) (Donato, J.)........... 11, 12

*Marchese v. Shearson Hayden Stone, Inc.*,
  734 F.2d 414 (9th Cir. 1984), *aff'd* 822 F.2d 876 (1987) ..................................................... 9

*Martinez v. Ross Stores, Inc.*,
  No. 18-CV-04636-JD, 2019 WL 4221704 (N.D. Cal. Sept. 5, 2019) (Donato,
  J.)................................................................................................................................. 11

*Mohamed v. Uber Technologies, Inc.*,
  848 F.3d 1201 (9th Cir. 2016)........................................................................................ 11

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

TWITTER'S MTC ARBITRATION AND
STRIKE CLASS CLAIMS
CASE NO. 3:22-CV-06857-JD

*Momot v. Mastro*,
    652 F.3d 982 (9th Cir. 2011).............................................................................................. 11

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*,
    460 U.S. 1 (1983) .................................................................................................................. 9

*Nanavati v. Adecco USA, Inc.*,
    99 F.Supp.3d at 1076 ........................................................................................................... 8

*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC*,
    55 Cal. 4th 223 (2012) ....................................................................................................... 12

*Rodriguez v. American Technologies*,
    136 Cal.App.4th 1110 (2006)............................................................................................... 6

*Ruiz v. Moss Bros. Auto Grp., Inc.*,
    232 Cal.App.4th 836 (2014) ................................................................................................ 8

*Smith v. Rent-A-Center, Inc.*,
    No. 118CV01351LJOJLT, 2019 WL 1294443 (E.D. Cal. Mar. 21, 2019)............................ 7

*Tagliabue v. J.C. Penney Corp., Inc.*,
    No. 1:15-CV-01443-SAB, 2015 WL 8780577 (E.D. Cal. Dec. 15, 2015) ............................ 8

*U.S. v. Sutcliffe*,
    505 F.3d 944 (9th Cir. 2007)................................................................................................ 6

*United States v. Trotter*,
    478 F.3d 918 (8th Cir.2007) (per curiam)............................................................................ 6

*United States ex rel. Welch v. My Left Foot Children's Therapy, LLC*,
    871 F.3d 791 (9th Cir. 2017)................................................................................................ 9

*Williams v. Eaze Sols., Inc.*,
    417 F. Supp. 3d 1233 (N.D. Cal. 2019) (Donato, J.) ......................................................... 12

**Statutes**

9 U.S.C. § 1 ................................................................................................................................... 4

9 U.S.C. § 2 ................................................................................................................................... 6

28 U.S.C. §§ 2201-02 ................................................................................................................... 6

29 U.S.C. § 2101 ........................................................................................................................... 6

Cal. Civ. Code § 1633.1 ............................................................................................................... 7

Cal. Civ. Code § 1633.7(a) ........................................................................................................... 7

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

TWITTER'S MTC ARBITRATION AND
STRIKE CLASS CLAIMS
CASE NO. 3:22-CV-06857-JD

Cal. Civ. Code § 1633.9 ................................................................................................. 8

Cal. Lab. Code § 1400 .................................................................................................... 6

California WARN Act................................................................................................. 6, 9

Declaratory Judgment Act......................................................................................... 5, 9

Federal Arbitration Act .......................................................................................... *passim*

**Court Rules**

Fed. R. Evid. 901(a) ...................................................................................................... 7

Fed. R. Evid. 901(b)(4) ................................................................................................. 8

Fed. R. Civ. Pro. 23(d) .................................................................................................. 1

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

v

TWITTER'S MTC ARBITRATION AND
STRIKE CLASS CLAIMS
CASE NO. 3:22-CV-06857-JD

## I.    INTRODUCTION

Plaintiffs Emmanuel Cornet, Justine de Caires, Grae Kindel, Alexis Camacho, and Jessica Pan ("Plaintiffs") filed this putative employment class action against Defendant Twitter, Inc. ("Twitter") as a preemptive strike to disrupt Twitter's planned administration of its lawful November 4, 2022 reduction in force.  Plaintiffs knew they had agreed to arbitrate their claims on an individual basis, yet purposefully chose to disregard their contractual arbitration commitments in order to file this lawsuit and unfairly prevent employees impacted by the reduction in force from having the opportunity to obtain severance benefits.[1]  As this Court is aware, the Federal Arbitration Act ("FAA") and applicable United States Supreme Court precedent dictate that where, as here, a plaintiff has entered into an arbitration agreement with a class action waiver, their individual claims must be compelled to arbitration and the putative class claims dismissed. Plaintiffs cannot prosecute their claims before this Court because they agreed to binding arbitration, on an individual basis, as the exclusive means to resolve any employment-related disputes.  The Court should compel Plaintiffs to arbitrate their individual claims, strike and/or dismiss their putative class action claims and dismiss this action in its entirety.

## II.    RELEVANT FACTUAL BACKGROUND

### A.    <u>Plaintiffs Entered Into a Binding Dispute Resolution Agreement with Twitter.</u>

When Twitter offers a job to an applicant for an employment position in the United States, a member of Twitter's Global People Services team prepares an offer packet in Twitter's internal OWL system.  Declaration of Fidelma Callaghan ("Callaghan Decl.") ¶ 3.  The offer packet includes the applicant's offer letter, a separate standalone Dispute Resolution Agreement, and other documents. *Id.*  Twitter sends the applicant's offer packet to the applicant via the email address provided by the applicant during the application process (or their @twitter.com email address if the offer was made in connection with a conversion from an contractor role to an

---

[1] Along with this motion to compel arbitration, Twitter is filing its Opposition to Plaintiffs' "Emergency" Motion for a Protective Order.  As explained more fully in Twitter's Opposition, Plaintiffs' putative class complaint is an artifice for Plaintiffs' counsel to invoke Rule 23(d) in an improper effort to solicit clients in connection with Twitter's lawful reduction in force.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

TWITTER'S MTC ARBITRATION AND
STRIKE CLASS CLAIMS
CASE NO. 3:22-CV-06857-JD

employee position). *Id.*  An applicant's offer letter explains the steps the applicant must take to accept the offer, which includes signing the offer letter and signing the Dispute Resolution Agreement (as well as other documents in the offer packet) and returning the signed documents to Twitter on or before the date on which the offer expires. *Id.* ¶ 4.  While the offer letters provided to the Plaintiffs contained some differences in wording, the material terms were substantively the same. Specifically, the offer letters provided to Camacho, Kindel and De Caires stated:

> **Dispute Resolution**. We sincerely hope that no dispute will arise between us.  If a dispute should arise, it can be resolved through the Company's Dispute Policy. A copy of the Dispute Resolution Policy is enclosed with this letter.

The offer letters provided to Pan and Cornet stated:

> **Dispute Resolution**. We sincerely hope that no dispute will arise between us.  If a dispute should arise, it can be resolved through the Company's Dispute Policy, unless you choose to opt-out of the same pursuant to its terms. A copy of the Dispute Resolution Policy is enclosed with this letter.

The offer letters to Kindel, Camacho and De Caires stated:

> To indicate your acceptance of this offer, please initiate the authorization of your background check, and sign and date the enclosed duplicate original of this letter agreement, the enclosed Confidentiality Agreement, and the enclosed Dispute Resolution Policy and return them to [Twitter representative].

Similarly, the offer letters to Pan and Cornet stated:

> To accept this offer, please initiate the authorization of your background check, and sign and date this offer letter, and the other documents enclosed with this letter (including the Confidentiality Agreement and Dispute Resolution Agreement) and return them via Adobesign.

*Id.* ¶ 7(a)-(e); Exs. A-E.

In the space immediately above the location where the applicant is directed to sign, the offer letters to Kindel, Camacho and De Caires contained the following attestation: "I have read, understood and accept all the provisions of this offer of employment."[2] *Id.*  When an applicant receives an electronic link to an offer letter and clicks on the link, the internet-based Adobe Sign

---

[2] This sentence in the offer letters to Cornet and Pan included the additional prefatory language "By signing below,".

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

TWITTER'S MTC ARBITRATION AND
STRIKE CLASS CLAIMS
CASE NO. 3:22-CV-06857-JD

program launches and presents the applicant with the complete offer packet in PDF format.[3]  *Id.* ¶ 5.  The program allows the applicant to scroll up and down to review the text of each document on the applicant's computer screen; there is no time limit on this review and the applicant can take as long as desired to read the text of each document.  *Id.*  The program also identifies the portions of the documents that require an applicant's signature or initials, and the program allows the applicant to apply his or her electronic signature or initials via their choice of typing, drawing, or taking a picture of their signature.  *Id.*  When the applicant has completed reviewing and signing the documents, the applicant is prompted to click a button that finalizes and applies the electronic signatures, which submits the entire executed packet to Twitter, and also provides a hyperlink to the documents for the applicant to download. *Id.*  The Adobe Sign system also sends a copy of the signed offer packet to the applicant's email address.  *Id.* ¶ 6.  When Twitter receives a copy of the signed offer letter and Dispute Resolution Agreement, Twitter saves the signed documents in the applicant's personnel file.  *Id.* ¶ 7(a)-(e).

Here, each of the named Plaintiffs received an offer packet from Twitter that included their offer letter and the Dispute Resolution Agreement.  *Id.*, Exs. A-E.  Each Plaintiff electronically signed their offer letter, and each Plaintiff separately signed their Dispute Resolution Agreement.  *Id.*  Each Plaintiff further manifested assent to the Dispute Resolution Agreement by remaining employed by Twitter 30 days without submitting a request to opt out of arbitration.  *Id.* ¶ 8.

**B.**   **The Relevant Terms of the Dispute Resolution Agreement.**

The named Plaintiffs signed three slightly different version of the Dispute Resolution Agreement ("Agreement") – Version One (signed by Kindel 2017 and Camacho 6/2018); Version Two (signed by De Caires 10/2018); Version Three (signed by Pan 2019 and Cornet 2021).  *See* Callaghan Decl., Exs. A-E.  The operative, material terms are substantially the same. Specifically, the Dispute Resolution Agreement provides:

- Introductory Paragraph. Versions One and Two of the Agreement state at the top

---

[3] Adobe Sign is a type of cloud-based electronic signature application program that allows users to send, sign, track, and manage signature processes using a browser or mobile device.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

TWITTER'S MTC ARBITRATION AND
STRIKE CLASS CLAIMS
CASE NO. 3:22-CV-06857-JD

of the first page:

> **"This Dispute Resolution Agreement is a contract and covers important issues relating to your rights. It is your sole responsibility to read it and understand it.  You are free to seek assistance from independent advisors of your choice outside the Company or to refrain from doing so if that is your choice."**[4]

- Governing Law.  All Versions of the Agreement expressly state that it is "governed by the Federal Arbitration Act, 9 U.S.C. § 1, et seq. and evidences a transaction involving commerce." *Id.* § 1.

- Covered Claims.  Versions One and Two state that it applies to "any dispute arising out of or related to Employee's employment with Twitter, Inc. . . . or termination of employment, and survives after the employment relationship terminates. . . . [and] "also applies, without limitation, to disputes regarding the employment relationship . . . termination . . . and claims arising under . . . state statutes, if any, addressing the same or similar subject matters, and all other state statutory and common law claims."[5] *Id.*

- Commitment to Arbitrate Claims. Versions One and Two state: "Except as it otherwise provides, this Agreement is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration. This Agreement requires all such disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial."[6] *Id.*

- Right to Opt Out.  Versions One and Two explicitly state that arbitration is not a mandatory condition of an employee's employment with Twitter and provide an opt-out procedure for employees who do not want to be bound by the terms of the Agreement.

> **Arbitration is not a mandatory condition of Employee's employment at the Company, and therefore an Employee may submit a form stating that the Employee wishes to opt out and not be subject to this Agreement.** The Employee must submit a signed and dated statement on a "Dispute Resolution Agreement Opt Out Form" ("Form") that can be obtained from the Company's Human Resources Department at hr@twitter.com.

---

[4] Version Three contains this same statement, plus the following additional language: **"You can choose to opt out of this Agreement – you have 30 days to opt out**."
[5] Version Three contains the additional language in the last sentence "and any other employment-related claim."
[6] Version Three substitutes the phrase "covered disputes" for "such disputes."

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

TWITTER'S MTC ARBITRATION AND
STRIKE CLASS CLAIMS
CASE NO. 3:22-CV-06857-JD

. . .

An Employee who timely opts out as provided in this paragraph will not be subject to any adverse employment action as a consequence of that decision and may pursue available legal remedies without regard to this Agreement. . .[7]

*Id.*, Exs. C-E, § 8 (emphasis in original); Exs. A-B, § 8 (substantively the same).

- <u>Delegation Clause</u>.  All Versions of the Agreement contain a delegation clause that authorizes the arbitrator to resolve all "disputes arising out of or relating to [the] interpretation or application of this Agreement, including the enforceability, revocability or validity of the Agreement or any portion of the Agreement."[8]  *Id.*, Exs. A-E § 1.

- <u>Class Action Waiver</u>.  All Versions of the Agreement state:

  **You and the Company agree to bring any dispute in arbitration on an individual basis only, and not on a class, collective, or private attorney general representative action basis.**[9]

*Id.* § 5.  All Versions also expressly provide that the enforceability of the class action waiver may be determined only by a "court of competent jurisdiction" and not by an arbitrator.  *Id.*

- <u>Arbitration Provider</u>.  Version One does not specify an arbitration provider. Versions Two and Three specify that the parties "agree to bring any claim in arbitration before Judicial Arbitration and Mediation Services ("JAMS").  *Id.,* Exs. C-E § 5.

---

[7] Version Three substitutes hr@twitter.com for hrlegaldocs@twitter.com.

[8] Version One includes the additional statements: "Except as it otherwise provides, this Agreement is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration.  This Agreement requires all such disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial."

[9] Version Three includes the additional sentence: "Employee and the Company agree that any arbitration will be limited to the claims between Employee and the Company individually. Employee acknowledges and agrees that Employee and the Company are each waiving the right to participate as a plaintiff or class member in any purported class action, collective action or representative action proceeding ("Class Action Waiver")."

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

TWITTER'S MTC ARBITRATION AND
STRIKE CLASS CLAIMS
CASE NO. 3:22-CV-06857-JD

**C.**   **Despite Their Agreement to Arbitrate on an Individual Basis Only, Plaintiffs Filed a Putative Class Action in This Court.**

On November 3, 2022, upon learning of Twitter's planned reduction in force, Plaintiffs filed a complaint alleging putative class claims for violation of the federal and California WARN Acts and seeking relief under the Declaratory Judgment Act. ECF No. 1.  On November 8, 2022, Plaintiffs filed the operative First Amended Class Action Complaint ("FAC") alleging putative class claims for: (i) breach of contract; (ii) breach of contract (third-party beneficiary); (iii) promissory estoppel; (iv) violation of WARN Act (29 U.S.C. §§ 2101 *et seq.*); (v) violation of California WARN Act (Cal. Lab. Code § 1400 *et seq.*); and (vi) Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.  ECF No. 6.  Each of these claims arises out of and relates to Plaintiffs' employment with Twitter and, with the exception of Camacho, the termination thereof.

## III.   ARGUMENT

Where, as here, an arbitration agreement has an express "FAA choice-of-law" provision, the FAA governs the agreement.  *Kim v. Tinder, Inc.*, 2018 WL 6694923, at *2 (C.D. Cal. July 12, 2018) (citing *Brennan v. Opus Bank*, 796 F.3d 1125, 1129-1131 (9th Cir. 2015)); *Rodriguez v. American Technologies*, Inc., 136 Cal.App.4th 1110, 1122 (2006).  Even if the Agreement did not expressly incorporate the FAA, the FAA still applies because Twitter's business plainly "involve[es] commerce."  *See* 9 U.S.C. § 2.  Indeed, courts broadly construe the FAA's use of the term "involving commerce" to cover any contract affecting interstate commerce to the full extent of Congress's Commerce Clause power.  *See Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (citing *Allied–Bruce Terminix Cos.*, 513 U.S., at 273–274, 115 S.Ct. 834.  As the Ninth Circuit has explained, "the Internet is an instrumentality and channel of interstate commerce." *U.S. v. Sutcliffe*, 505 F.3d 944, 952-53 (9th Cir. 2007) (quoting *United States v. Trotter*, 478 F.3d 918, 921 (8th Cir. 2007) (per curiam)).  The FAA plainly governs the Agreements at issue here.

Under the FAA, an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The US Supreme Court has mandated that arbitration agreements governed by the FAA "must be enforced as written," subject only to generally applicable contract defenses such as

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

TWITTER'S MTC ARBITRATION AND
STRIKE CLASS CLAIMS
CASE NO. 3:22-CV-06857-JD

1   fraud, duress, or unconscionability. *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1632 (2018).

2   The FAA "leaves no room for the exercise of discretion by a district court, but instead mandates

3   that district courts shall direct the parties to proceed to arbitration on issues as to which an

4   arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218

5   (1985).

6         In deciding a motion to compel arbitration under the FAA, the Court's role is limited to

7   answering two questions: (1) does a valid agreement to arbitrate exist; and, if so, (2) does the

8   arbitration agreement encompass the dispute or claims at issue?  If the answer to both questions is

9   "yes," then the Court must compel arbitration.  *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207

10  F.3d 1126, 1130 (9th Cir. 2000).  Here, because the answer to both inquiries is unequivocally

11  "yes," the Court should compel each of the Plaintiffs individually to arbitrate their claims.

12      **A.**    **The Court Must Compel Plaintiffs to Arbitration on an Individual Basis**

13            **1.**    **The Plaintiffs Assented to the Agreement Both by Signing It and by**

14                **Remaining Employed for 30 Days Without Opting Out.**

15        Courts generally apply state-law principles of contract formation when deciding whether

16  parties assented to a contract. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944

17  (1995); *see also Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1093 (9th Cir. 2014).  In California, an

18  agreement to arbitrate may be either express or implied in fact.  *Davis*, 755 F.3d at 1093.  "A

19  defendant may meet its initial burden to show an agreement to arbitrate by attaching a copy of the

20  arbitration agreement purportedly bearing the opposing party's signature to the defendant's

21  motion to compel arbitration."  *Smith v. Rent-A-Center, Inc.*, No. 118CV01351LJOJLT, 2019 WL

22  1294443, at *4 (E.D. Cal. Mar. 21, 2019) (quoting *Espejo v. S. California Permanente Med. Grp.*,

23  246 Cal.App.4th 1047, 1060 (2016)).

24        California enacted the Uniform Electronic Transaction, Cal. Civ. Code § 1633.1 *et seq.*,

25  which provides that a "signature may not be denied legal effect or enforceability solely because it

26  is in electronic form[,]" and specifies that "[a] contract may not be denied legal effect or

27  enforceability solely because an electronic record was used in its formation." Cal. Civ. Code §

28  1633.7(a).  A defendant must show by a preponderance of the evidence that the electronic

signature on an agreement is attributable to a plaintiff (*i.e.*, that it is more likely than not it was the plaintiff's act that caused the signature to be created).  Fed. R. Evid. 901(a); *see, e.g., Beckman v. Zuffa LLC,* No. CV215570MWFAGRX, 2021 WL 5445464, at *4 (C.D. Cal. Nov. 15, 2021) (granting motion to compel arbitration in employment case where the employee affixed electronic signature to the agreement using Adobe Sign).  This "may be shown in any manner," including by circumstantial evidence, and it "is not a difficult evidentiary burden to meet." *Ruiz v. Moss Bros. Auto Grp., Inc.*, 232 Cal.App.4th 836, 843-844 (2014) (citing Cal. Civ. Code § 1633.9); *see also Nanavati v. Adecco USA, Inc.*, 99 F.Supp.3d at 1076 (holding that a detailed declaration "easily satisfies Defendant's low burden to authenticate Plaintiff's electronic signature and establish the existence of a valid arbitration agreement").  Fed. R. Evid. 901(b)(4) allows consideration of the "appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances to authenticate a document." Declarations from company representatives are sufficient to authenticate electronic signatures. *See Nanavati v. Adecco USA, Inc.*, 99 F.Supp.3d 1072, 1076 (N.D. Cal. 2014); *Jones-Mixon v. Bloomingdale's, Inc.*, No. 14-cv-01103-JCS, 2014 WL 2736020, at *4 (N.D. Cal. June 11, 2014). In *Tagliabue v. J.C. Penney Corp., Inc.*, No. 1:15-CV-01443-SAB, 2015 WL 8780577, at *3 (E.D. Cal. Dec. 15, 2015), the plaintiff disputed the validity of his electronic signature on an arbitration agreement.  The employer submitted evidence regarding its onboarding system and process for new hires to complete designated steps, including electronically signing an arbitration agreement, to complete the hire process.  *Id.*  The court in *Tagliabue* found that this evidence, coupled with the fact the plaintiff's electronic signature appeared on other documents presented to him during onboarding, established that the plaintiff more likely than not had signed the agreement.  *Id.*; *see also Beckman*, 2021 WL 5445464, at *4.

Here, Plaintiffs cannot dispute that they electronically signed their Agreements, their signatures appear on the Agreements, their signatures appear on their offer letters, and they could not have completed the process and been hired by Twitter without signing the Agreements. Callaghan Decl. ¶ 4, Exs. A-E.  Plaintiffs further manifested their assent to the Agreement by remaining employed at Twitter for 30 days without submitting an opt our request.  Callaghan

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

TWITTER'S MTC ARBITRATION AND
STRIKE CLASS CLAIMS
CASE NO. 3:22-CV-06857-JD

1  Decl. ¶¶ 7-8, Exs. A-E § 8 ("Should an Employee not opt out of this Agreement within 30 days of

2  the Employee's receipt of this Agreement, continuing the Employee's employment constitutes

3  mutual acceptance of the terms of this Agreement by Employee and the Company").  As a result,

4  the Court must find that a valid agreement to arbitrate exists for each Plaintiff.

5  **2.**     **The Agreement Encompasses the Claims Alleged in the FAC.**

6      To determine the scope of an arbitration agreement, the Court must look to the express

7  terms of the parties' agreement.  *United States ex rel. Welch v. My Left Foot Children's Therapy,*

8  *LLC*, 871 F.3d 791, 796 (9th Cir. 2017) (citing *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*,

9  207 F.3d 1126, 1130 (9th Cir. 2000)).  "If the text is plain and unambiguous, that is the end of our

10 analysis in this case because we must rigorously enforce arbitration agreements according to their

11 terms." *United States ex rel. Welch*, 871 F.3d at 796 (citations omitted).  A claim is subject to

12 arbitration "unless it may be said with positive assurance that the arbitration clause is not

13 susceptible of an interpretation that covers the asserted dispute."  *Marchese v. Shearson Hayden*

14 *Stone, Inc.*, 734 F.2d 414, 419 (9th Cir. 1984), *aff'd* 822 F.2d 876 (1987).  "[A]ny doubts

15 concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H.*

16 *Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983).

17      Here, Plaintiffs' FAC alleges claims for breach of contract, promissory estoppel,

18 violations of the federal and California WARN Act, and the Declaratory Judgment Act, all of

19 which are premised on the Plaintiffs' employment with (and except for Camacho) termination

20 from Twitter.  FAC, pp. 8-11.  Plaintiffs' contract and promissory estoppel claims are premised

21 on Twitter's alleged failure to provide the same employment benefits and severance pay

22 following the sale of the Company and alleged promises related to remote work.  FAC, pp. 8-10.

23 Plaintiffs' federal and California WARN Act claims arise from and relate to their alleged layoffs

24 from Twitter their derivative claim for a declaratory judgment is predicated on the same facts.  *Id.*

25 pp. 10-111. Each of these claims falls squarely within the scope of the Agreement because they

26 are disputes "arising out of or related to [their] employment with Twitter" and (except for

27 Camacho) their termination.  Plaintiffs cannot dispute that the claims in the FAC are covered by

28 and subject to arbitration under the plain terms of their Agreements.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

TWITTER'S MTC ARBITRATION AND
STRIKE CLASS CLAIMS
CASE NO. 3:22-CV-06857-JD

1

### 3.    The Class Action Waiver is Enforceable.

2      Class waivers in arbitration agreements are enforceable under the FAA.  Courts must

3  "rigorously enforce" arbitration agreements according to their terms, including terms that

4  "specify *with whom* [the parties] choose to arbitrate their disputes."  *Am. Express Co. v. Italian*

5  *Colors Rest.*, 570 U.S. 228, 233 (2013) (italics and brackets in original) (citations omitted).  There

6  is no "entitlement to class proceedings for the vindication of statutory rights."  *Id*. at 234.  The

7  Supreme Court overruled prior California law barring enforcement of class action waivers.

8  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 341-52 (2011).  Recognizing that "[t]he

9  overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements

10  according to their terms so as to facilitate streamlined proceedings," the Supreme Court held that

11  California law restricting class action waivers was "inconsistent with the FAA."  *Id*. at 344.  In

12  *Epic Systems Corp. v. Lewis*, 138 S. Ct. at 1632, the Supreme Court confirmed that arbitration

13  agreements in the employment context are no exception to the rule that class waivers are

14  enforceable under the FAA.

15      Here, the Plaintiffs expressly waived their right to file or participate in a class action when

16  they entered into the Agreement.  Versions One and Two state:

17      **You and the Company agree to bring any dispute in arbitration on an
       individual basis only, and not on a class, collective, or private attorney general
18     representative action basis.  Accordingly, (a) There will be no right or authority
       for any dispute to be brought, heard or arbitrated as a class action ("Class
19     Action Waiver").**

20      Version Three of the Agreement states:

21      **You and the Company agree to bring any dispute in arbitration on an
       individual basis only, and not on a class, collective, or private attorney general
22     representative action basis**.  Employee and the Company agree that any arbitration
       will be limited to the claims between Employee and the Company individually.
23     Employee acknowledges and agrees that Employee and the Company are each
       waiving the right to participate as a plaintiff or class member in any purported class
24     action, collective action, or representative action proceeding ("Class Action
       Waiver").

25

26  Callaghan Decl., Exs. A-E § 5.

27      Only the Court is authorized to resolve the enforceability of the class action waiver.  *See*

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

TWITTER'S MTC ARBITRATION AND
STRIKE CLASS CLAIMS
CASE NO. 3:22-CV-06857-JD

*Id.*[10]  Because the plain language in the Agreements clearly prohibits arbitration on a class basis, and because such waivers are enforceable as a matter of law, the Court should compel each Plaintiff, individually, to submit his or her claims to arbitration on an individual basis only.  *See, e.g., Martinez v. Ross Stores, Inc.,* No. 18-CV-04636-JD, 2019 WL 4221704, at *3 (N.D. Cal. Sept. 5, 2019) (Donato, J.) (acknowledging the validity of class action waiver); *Jacobson v. Snap-on Tools Company*, No. 15-CV-02141-JD, 2015 WL 8293164, at *6 (N.D. Cal. Dec. 9, 2015) (Donato, J.) (enforcing class action waiver and ordering plaintiff to submit his claims to arbitration on an individual basis); *Lacour*, 2021 WL 1700204 at *6 (striking class claims and compelling individual arbitration).

Further, the Court should exercise its discretion to dismiss this lawsuit given that all of the Plaintiffs' claims are subject to an arbitration agreement.  *See Johnmohammadi v. Bloomingdale's, Inc.,* 755 F.3d 1072, 1074-75 (9th Cir. 2014) ("a district court may either stay the action or dismiss it out right when . . . the court determines that all of the claims raised in the action are subject to arbitration"); *Lewis v. UBS Fin. Servs. Inc.*, 818 F. Supp. 2d 1161, 1169 (N.D. Cal. 2011) (enforcing class action waiver and dismissing lawsuit with prejudice); *Louis v. Healthsource Global Staffing, Inc.,* No. 22-CV-02436-JD, 2022 WL 4960666, at *3 (N.D. Cal. Oct. 3, 2022) (Donato, J.) (granting a motion to compel arbitration and dismissing the action).

### 4.    The Delegation Clause Is Enforceable

Parties may agree to delegate gateway issues of arbitrability to an arbitrator so long as there is "clear and unmistakable" evidence of their intent to do so.  *Momot v. Mastro*, 652 F.3d 982, 987-988 (9th Cir. 2011) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)); *Mohamed v. Uber Technologies, Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016).  Here, Version One of the Agreement states:

> [T]his Agreement is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration.  This Agreement requires all such disputes to be resolved only by an arbitrator through

---

[10] Such a determination should be made in the Court's order compelling each Plaintiff's individual claims to arbitration, and not be deferred pending any challenges to the Agreement's enforceability.  *See, e.g., Lacour v. Marshalls of CA, LLC*, No. 20-CV-07641-WHO, 2021 WL 1700204, at *6 (N.D. Cal. Apr. 29, 2021) (enforcing the class action waiver while ordering the arbitrator to determine all other issues of enforceability).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

TWITTER'S MTC ARBITRATION AND
STRIKE CLASS CLAIMS
CASE NO. 3:22-CV-06857-JD

final and binding arbitration and not by way of court or jury trial.  Such disputes include without limitation disputes arising out of or relating to [the] interpretation or application of this Agreement, including the enforceability, revocability or validity of the Agreement or any portion of the Agreement.

Versions Two and Three of the Agreement state:

Disputes covered by this Agreement include, without limitation, disputes arising out of or relating to [the] interpretation or application of this Agreement, including the enforceability, revocability or validity of the Agreement or any portion of the Agreement.

Because these terms clearly and unmistakably manifest the Parties' intent to delegate certain issues to the arbitrator, the Agreement's delegation clause is enforceable.  The Court should decide questions of contract formation and enforceability of the class action waiver and defer to the arbitrator questions related to the interpretation and enforceability of the Agreement. *See, e.g., Louis v. Healthsource Glob. Staffing, Inc.*, No. 22-CV-02436-JD, 2022 WL 4960666, at *2 (N.D. Cal. Oct. 3, 2022) (Donato, J.) (enforcing delegation clause); *Williams v. Eaze Sols., Inc.*, 417 F. Supp. 3d 1233, 1241 (N.D. Cal. 2019) (Donato, J.) (enforcing delegation clause).

### B.    The Agreement Is Enforceable As to All Plaintiffs.

Since Twitter has shown that a valid agreement to arbitrate exists and applies to the claims at issue, Plaintiff bears the burden of proving that the agreement is not valid or enforceable.  *Lang v. Skytap, Inc.*, 347 F.Supp.3d 420, 426 (N.D. Cal. 2018); *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC*, 55 Cal. 4th 223, 226 (2012).  An arbitration agreement can be invalidated only if there is a showing that the agreement is both procedurally and substantively unconscionable.  *Ferguson v. Countrywide Credit Industries, Inc.*, 298 F.3d 778, 783 (9th Cir. 2002); *see also Armendariz v. Foundation Health Psychare Services, Inc.,* 24 Cal. 4th 83, 114 (2000).  "These two elements, however, need not both be present in the same degree." *Ferguson*, 298 F.3d at 783.  "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa."  *Id.* (quoting *Armendariz*, 24 Cal. 4th at 114.)   As explained above, these issues are delegated to the arbitrator.  However, to the extent the Court chooses to address them, the Court should find that the Agreement is enforceable.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

TWITTER'S MTC ARBITRATION AND
STRIKE CLASS CLAIMS
CASE NO. 3:22-CV-06857-JD

1

### 1.  **The Agreement Is Not Procedurally Unconscionable.**

Procedural unconscionability refers to "oppression" or "surprise" due to unequal bargaining power that results in no real negotiation and an absence of meaningful choice.  *24 Hour Fitness, Inc. v. Superior Court*, 66 Cal.App.4th 1199, 1213 (1998).  The procedural element to unconscionability may arise in connection with adhesion contracts, but the finding of an adhesion contract does not "per se" render an arbitration agreement unenforceable.  *See*, *e.g.*, *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1245, 1251 (2016) (enforcing arbitration agreement where acceptance was a condition of employment).  Further, the U.S. Supreme Court has recognized that "there often will be unequal bargaining power between employers and employees."  *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991).  However, "[m]ere inequality in bargaining power" does not render an employee's arbitration agreement unenforceable.  *Id*.  Further, the "freedom to choose whether or not to enter a contract of adhesion is a factor weighing against a finding of procedural unconscionability."  *Dean Witter Reynolds, Inc. v. Superior Court*, 211 Cal.App.3d 758, 769-771 (1989); *see also Circuit City Stores v. Ahmed,* 283 F.3d 1198, 1199 (9th Cir. 2002) (finding no procedural unconscionability, in part, because the plaintiff had an opportunity to opt out of arbitration).

Here, the Agreement is not procedurally unconscionable.  The Agreement is a standalone document entitled "Dispute Resolution Agreement."  Versions One and Two of the Agreement have a disclaimer, in bold type, at the top of the first page advising applicants that the Agreement "is a contract and covers important issues relating to your rights" and advising them of their right to "seek assistance from independent advisors" regarding the Agreement.  *See* Callaghan Decl., Exs. A-E.  The Agreement uses plain language to explain the arbitration process and the rights an applicant is waiving by entering into the Agreement.  All Versions of the Agreement expressly state that "[a]rbitration is not a mandatory condition of Employee's employment at the Company" and advises employees of their right to opt out of the Agreement.  *Id.* at § 8.  There is no evidence of oppression or surprise and, accordingly, Plaintiffs cannot demonstrate that the Agreement is procedurally unconscionable.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

TWITTER'S MTC ARBITRATION AND
STRIKE CLASS CLAIMS
CASE NO. 3:22-CV-06857-JD

2.      **The Agreement Is Not Substantively Unconscionable.**

Substantive unconscionability "focuses on the terms of the agreement and whether those terms are so one-sided as to shock the conscience." *Kinney v. United HealthCare Servs., Inc.*, 70 Cal. App. 4th 1322, 1330 (1999).  The California Supreme Court in *Armendariz* set forth criteria for assessing whether an agreement may be substantively unconscionable.  An employment arbitration agreement must provide for the following: (1) a neutral arbitrator, (2) adequate discovery, (3) a written award, (4) the availability of all the types of relief that would otherwise be available in court, (5) payment by the employer of any arbitration fees beyond what the employee would have to pay in court, and (6) include a "modicum of bilaterality." *Armendariz*, 24 Cal. 4th at 102-14, 117-18.  Here, the Agreement satisfies each of these criteria.

First, the Agreement provides for the selection of a neutral arbitrator.  Version One of the Agreement states that "[t]he Arbitrator shall be selected by mutual agreement of the Company and the Employee" and "[i]f for any reason the parties cannot agree to an Arbitrator, either party may apply to a court of competent jurisdiction with authority over the location where the arbitration will be conducted for appointment of a neutral Arbitrator."  Callaghan Decl., Exs. A-B § 3.  Versions Two and Three state that "[t]he Arbitrator shall be selected by mutual agreement of the Company and the Employee," and that if the parties cannot agree on an arbitrator or at the request of either party, "the dispute shall be heard by a neutral arbitrator chosen according to the procedures found in then-current JAMS Employment Arbitration Rules and Procedures." *Id.*, Exs. C-E § 3.  Second, Versions Two and Three of the Agreement provide for discovery sufficient to vindicate Plaintiffs' claims, stating: "[T]he parties will have the right to conduct adequate civil discovery, bring dispositive motions, and present witnesses and evidence to present their cases and defenses, and any disputes in this regard shall be resolved by the Arbitrator."[11] *Id.*, Ex. C-E § 5.  Third, the Agreement specifically provides for a written, reasoned award. Version One provides, "The Arbitrator will issue a decision or award in writing, stating the

---

[11] Version One states: "[T]he parties will have the right to conduct adequate civil discovery, bring dispositive motions, and present witnesses and evidence as needed to present their cases and defenses, and any disputes in this regard shall be resolved by the Arbitrator."

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

TWITTER'S MTC ARBITRATION AND
STRIKE CLASS CLAIMS
CASE NO. 3:22-CV-06857-JD

essential findings of fact and conclusions of law."[12] *Id*., Ex. A-B, § 7.   Fourth, nothing in the Agreements limits the legal rights, remedies, or defenses that would be available in court and provide for all types of relief that otherwise would be available in court. *Id.,* Ex. A-E § 7 ("The Arbitrator may award any party any remedy to which that party is entitled under applicable law, but such remedies shall be limited to those that would be available to a party in his or her individual capacity in a court of law for the claims presented to and decided by the Arbitrator, and no remedies that otherwise would be available to an individual in a court of law will be forfeited by virtue of this Agreement").[13] Fifth, all Versions of the Agreement provide that Twitter will pay the arbitrator's fees where required by law. *Id.* § 6 ("in all cases where required by law, the Company will pay the Arbitrator's and arbitration fees").   Finally, the Agreements provide that all parties are mutually required to submit their claims to arbitration. *Id.* § 1 (All Versions of the Agreement state: "This Agreement applies to any dispute arising out of or related to Employee's employment with Twitter, Inc. . .")   The Agreements are binding on both Plaintiffs and Twitter, thereby satisfying the final *Armendariz* requirement of a "modicum of bilaterality."

## IV.   CONCLUSION

Plaintiffs each signed an arbitration agreement that mutually binds them and Twitter to arbitrate any dispute arising from or related to their employment on an individual basis.   The agreement encompasses the claims asserted in the FAC.   As a result, the Court should compel arbitration of their individual claims, dismiss the class claims, and dismiss this action.

Dated: November 21, 2022                                   MORGAN, LEWIS & BOCKIUS LLP


                                                                  By   */s/ Eric Meckley*
                                                                        Eric Meckley
                                                                        Brian D. Berry
                                                                        Ashlee Cherry
                                                                        Attorneys for Defendant
                                                                        TWITTER, INC.

---

[12] Versions Two and Three also include the language "Unless otherwise agreed by the parties in writing" and require the arbitrator to issue a written decision "within 30 days after the date of closing of the arbitration hearing or the completion of post-hearing briefing, whichever is later."
[13] Versions Two and Three include the additional language: "The Arbitrator shall apply substantive law as applicable to the claims,".

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

TWITTER'S MTC ARBITRATION AND
STRIKE CLASS CLAIMS
CASE NO. 3:22-CV-06857-JD