SHANNON LISS-RIORDAN (SBN 310719)
(sliss@llrlaw.com)
THOMAS FOWLER (*pro hac vice* forthcoming)
(tfowler@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone:     (617) 994-5800
Facsimile:     (617) 994-5801

*Attorneys for Plaintiffs Emmanuel Cornet,*
*Justine De Caires, Grae Kindel, Alexis Camacho,*
*and Jessica Pan, on behalf of themselves*
*and all others similarly situated*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| EMMANUEL CORNET, JUSTINE DE CAIRES, GRAE KINDEL, ALEXIS CAMACHO, AND JESSICA PAN, on behalf of themselves and all others similarly situated,<br><br>            Plaintiffs,<br><br>     v.<br><br>TWITTER, INC.<br><br>            Defendant. | Case No. 3:22-cv-06857-JD<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF THEIR EMERGENCY MOTION FOR A PROTECTIVE ORDER**<br><br><u>Hearing:</u><br>Date:    December 8, 2022<br>Time:    3:00 PM, PST<br>Place:   Courtroom 11<br>Judge:  Hon. James Donato<br><br>ACTION FILED: November 3, 2022 |

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................................... 1

II.    ARGUMENT ................................................................................................................. 4

       A.     The Court Should Address this Emergency Motion Immediately in Order
              to Preserve the Status Quo in this Matter ................................................... 4

       B.     The Relief that Plaintiffs Seek is Appropriate Given the Circumstances
              Presented by Twitter's Conduct .................................................................. 11

       C.     Twitter's Challenges to the Validity of Plaintiffs' Underlying Claims Are
              Premature and Need Not be Decided at this Stage ................................... 13

       D.     A Protective Order Under Rule 23(d) Will Not Mislead Employees ................... 14

III.   CONCLUSION ............................................................................................................. 15

PLAINTIFFS' REPLY IN SUPPORT OF THEIR EMERGENCY MOTION
FOR A PROTECTIVE ORDER

# TABLE OF AUTHORITIES

**Cases**

Adolph v. Uber Technologies,
  S274671, Order Granting Review (Cal. Aug. 1, 2022) ...................................................... 5

Agerkop v. Sisyphian LLC,
  2020 U.S. Dist. LEXIS 207887 (C.D. Cal. Aug. 18, 2020)................................................ 9

American Exp. Co. v. Italian Colors Restaurant,
  133 S. Ct. 2304 (2013) ...................................................................................................... 7

Barone v. LAZ Parking Ltd., LLC,
  2019 WL 5328832 (D. Conn. Oct. 20, 2019) .................................................................... 9

Bradford v. Team Pizza, Inc.,
  2020 WL 3496150 (S.D. Ohio June 29, 2020) .................................................................. 9

Brooks v. C.H. Robinson International, Inc.,
  2017 WL 10506772 (W.D. Mo. May 9, 2017) .................................................................. 9

Camp v. Bimbo Bakeries USA, Inc.,
  2019 WL 1472586 (D.N.H. Apr. 3, 2019).......................................................................... 9

Campanelli v. Image First Healthcare Laundry Specialists, Inc.,
  2018 WL 6727825 (N.D. Cal. Dec., 2018) ........................................................................ 9

Cheng v. Activision Blizzard, Inc.,
  2022 WL 2101919 (C.D. Cal. April 18, 2022) ................................................................ 14

County of Santa Clara v. Astra USA, Inc.,
  2010 WL 2724512 (N.D. Cal. July 8, 2010)................................................................... 12

Cuevas v. ConAm Management Corp.,
  2019 WL 5320544 (S.D. Cal. Oct. 21, 2019) .................................................................... 9

Davis v. NovaStar Mortg., Inc.,
  408 F. Supp. 2d 811 (W.D. Mo. 2005) .............................................................................. 9

Delara v. Diamond Resorts,
  2020 WL 2085957 (D. Nev. Apr. 30, 2020) ...................................................................... 9

Direct Biologics, LLC v. McQueen,
  2022 WL 1693995 (W.D. Tex. May 26, 2022) .................................................................. 6

Droesch v. Wells Fargo Bank, N.A.,
  2021 WL 2805604 (N.D. Cal. July 6, 2021)................................................................... 10

Filho v. OTG Mgmt., LLC,
  2021 WL 1191817 (S.D.N.Y. Mar. 30, 2021) ................................................................... 9

Friedman v. Intervet Inc.,
    730 F. Supp. 2d 758 (N.D. Ohio 2010)........................................................................... 10

Gathmann-Landini v. Lululemon USA Inc.,
    2018 WL 3848922 (E.D.N.Y. Aug. 13, 2018).................................................................. 9

Grove v. Iowa Playhouse et al.,
    1:20-cv-0027-SMR-CFB, Dkt. 27 (W.D. Iowa Apr. 21, 2021)........................................ 9

Grove v. Meltech, Inc.,
    2020 WL 7133568 (D. Neb. Dec. 3, 2020)...................................................................... 9

Guifu Li v. A Perfect Day Fran., Inc.,
    270 F.R.D. 509 (N.D. Cal. 2010)................................................................................... 12

Herrera v. EOS IT Management Solutions, Inc.,
    2020 WL 7342709 (N.D. Cal. Dec. 14, 2020).................................................................. 9

Holyfield v. Julien Entertainment.com, Inc.,
    2012 WL 58783860 (C.D. Cal. Nov. 21, 2012)................................................................ 6

Hughes v. S.A.W. Entertainment, LTD,
    2017 WL 6450485 (N.D. Cal. Dec. 18, 2017).............................................................. 8, 9

In re Blackbaud,
    2020 WL 1137885 (D.S.C. April 18, 2022) .............................................................. 12, 13

In re JPMorgan Chase & Co.,
    916 F.3d 494 (5th Cir. 2019) .......................................................................................... 9

In re Organogenesis Sec. Litig.,
    241 F.R.D. 397 (D. Mass. 2007).................................................................................... 3

Janvey v. Alguire,
    647 F.3d 585 (5th Cir. 2011) .......................................................................................... 6

Jones v. Jeld-Wen, Inc.,
    250 F.R.D. 554 (S.D. Fla. 2008).................................................................................. 11

Kephart v. Data Systems Intern., Inc.,
    243 F. Supp. 2d 1205 (D. Kan. 2003)........................................................................... 13

Kutzman v. Derrel's Mini Storage, Inc.,
    2018 WL 6625791 (E.D. Cal. Dec. 18, 2018) ............................................................... 11

Lancaster v. FQSR,
    2020 WL 5500227 (D. Md. Sept. 11, 2020) ................................................................... 9

Lijun Geng v. Shu Han Ju Rest. II, Corp.,
    2019 WL 4493429 (S.D.N.Y. Sept. 6, 2019)................................................................. 9

PLAINTIFFS' REPLY IN SUPPORT OF THEIR EMERGENCY MOTION
FOR A PROTECTIVE ORDER

Lynch v. Tesla,
    Civ. Act. No. 22-cv-00597-RP, Dkt. 38 (W.D. Tex. Sept. 26, 2022)................................ 8

Lynch v. Tesla, Inc.,
    2022 WL 4295295 (W.D. Tex. Sept. 16, 2022)....................................................... passim

Lynch v. Tesla, Inc.,
    2022 WL 44766783 (W.D. Tex. Sept. 26, 2022)........................................................ 8

Lynch v. Tesla, Inc.,
    No. 22-51018 (5th Cir.) ......................................................................................... 8

Maney v. Brown,
    2021 WL 3598532 (D. Or. Aug. 13, 2021)..................................................... 11

Mode v S-L Distrib. Co., LLC,
    2019 WL 1232855 (W.D.N.C. Mar. 14, 2019) .................................................. 9

Monplaisir v. Integrated Tech Group, LLC,
    2019 WL 3577162 (N.D. Cal. Aug. 6, 2019) .................................................... 9

O'Connor v. Uber Technologies, Inc.,
    2013 WL 6407583 (N.D. Cal. Dec. 6, 2013) ................................................. 6, 7

O'Connor v. Uber Technologies, Inc.,
    2015 WL 5138097 (N.D. Cal. Sept. 1, 2015) .................................................. 7

O'Connor v. Uber Technologies, Inc.,
    904 F.3d 1087 (9th Cir. 2018) ......................................................................... 7

Pan Am. World Airways, Inc. v. U.S. Dist. Ct. for Cent. Dist. of California,
    523 F.2d 1073 (9th Cir. 1975) ....................................................................... 11

Parker v. Battle Creek Pizza, Inc.,
    2020 WL 4345010 (W.D. Mich. July 24, 2020) ............................................. 9

Paschal v. Child Development, Inc.,
    2014 WL 112214 (E.D. Ark. Jan. 10, 2014) ................................................. 14

PMS Distributing Co. v. Huber & Suhner, A.G.,
    863 F.2d 639 (9th Cir. 1988) ......................................................................... 6

Portillo v. National Freight, Inc.,
    2021 WL 1884892 (D.N.J. May 11, 2021) ................................................... 10

Racey v. Jay-Jay Cabaret, Inc.,
    2016 WL 3020933 (S.D.N.Y. May 23, 2016) ................................................. 9

Rogers v. Lyft, Inc.,
    452 F. Supp. 3d 904 (N.D. Cal.) .................................................................... 6

PLAINTIFFS' REPLY IN SUPPORT OF THEIR EMERGENCY MOTION
FOR A PROTECTIVE ORDER

<u>Romero v. La Revise Associates LLC</u>,
 968 F. Supp. 2d 639 (S.D.N.Y. 2013).................................................................. 9

<u>Sandbergen v. Ace Am. Ins. Co.</u>,
 2019 WL 13203944 (N.D. Cal. June 17, 2019) .............................................. 9

<u>Teleport Mobility, Inc. v. Sywula</u>,
 2021 WL 858438 (N.D. Cal. March 7, 2021) ................................................ 6

<u>Teradyne v. Mostek Corp.</u>,
 797 F.2d 43 (1st Cir. 1986)............................................................................. 6

<u>Toyo Tire Holdings of Americas Inc. v. Continental Tire North America, Inc.</u>,
 609 F.3d 975 (9th Cir. 2010) .................................................................. 1, 5, 6

<u>Vallone v. CJS Sols. Grp., LLC</u>,
 437 F. Supp. 3d 687 (D. Minn. 2020) ........................................................... 9

<u>Varghese v. JP Morgan & Chase Co.</u>,
 2016 WL 4718413 (S.D.N.Y. Sep. 8, 2016)................................................... 9

<u>Viking River Cruises, Inc. v. Moriana</u>,
 142 S. Ct. 1906 (2022)................................................................................... 5

<u>Williams v. Omainsky</u>,
 2016 WL 297718 (S.D. Ala. Jan. 21, 2016) ................................................. 9

**Statutes**

California Private Attorney General Act of 2004 ("PAGA"),
 Cal. Lab. Code § 2699 *et seq.* ...................................................................... 5

California WARN Act,
 Cal. Lab. Code § 1400 *et seq.* ...................................................................... 1

Fair Labor Standards Act ("FLSA"),
 29 U.S.C. §§ 201 *et seq.*...................................................................... 9, 10, 15

Fed. R. Civ. P. 23(d) ............................................................................... passim

Federal Arbitration Act ("FAA"),
 9 U.S.C. §§ 1 *et seq.*................................................................................ 5, 6, 13

Worker Adjustment and Retraining Notification Act,
 29 U.S.C. § 2101 *et seq.*................................................................................ 1

PLAINTIFFS' REPLY IN SUPPORT OF THEIR EMERGENCY MOTION
FOR A PROTECTIVE ORDER

1

## I.      INTRODUCTION

Despite the fact that this case has been filed asserting claims for breach of contract, promissory estoppel, and violation of the federal and California WARN Acts, 29 U.S.C. § 2101 *et seq.*, Cal. Lab. Code § 1400 *et seq.*, Twitter has maintained its intention to seek to obtain full releases from thousands of its employees who have recently lost their jobs – even though they are putative class members in this case – without providing them notice of the legal claims filed on their behalf that could entitle them to additional pay and benefits. If the Court declines to intervene, many Twitter employees are at risk of never being aware of these claims and signing them away for significantly less than they stand to gain by advancing their claims; Twitter would benefit from their ignorance, and Twitter's misconduct would go unremedied. In its Opposition to Plaintiffs' Emergency Motion, Twitter attempts to distract from this important issue by raising a number of arguments to try to prevent the Court from exercising its authority to regulate Twitter's conduct under Fed. R. Civ. P. 23(d). These arguments should all be rejected.

First, Twitter argues that the claims asserted here should be compelled to arbitration and so there will be no case left to litigate in court. However, as explained in Plaintiffs' response to Twitter's request to expedite the Court's consideration of its recently filed motion to compel arbitration (Dkt. 24), the Court should address Plaintiffs' motion first.[1] As many courts have recognized, the proper course is to consider preliminary issues, such as a motion for protective order, before addressing arbitration issues. See Dkt. 24 at 4-5.[2] Indeed, under similar circumstances, the court in Lynch v. Tesla, Inc., 2022 WL 4295295, at *1-4 (W.D. Tex. Sept. 16,

---

[1]      The Court appears to have recognized that this motion should be addressed first, as it has been scheduled to be heard on an expedited basis on December 8, 2022, and Twitter's motion to compel arbitration is now scheduled to be heard on January 12, 2023. See Dkt. 27.

[2]      Doing so will maintain the status quo in this case and protect potential class members' ability to advance their claims. Courts in the Ninth Circuit have routinely held that courts are empowered to issue preliminary relief to maintain the status quo even where a defendant seeks to compel arbitration. See Toyo Tire Holdings of Americas Inc. v. Continental Tire North America, Inc., 609 F.3d 975, 981 (9th Cir. 2010). Such preliminary relief is even contemplated by Twitter's arbitration agreement. See Cornet Arb. Agreement ¶ 4, Exhibit E to Callagher Decl., Dkt. 18-1.

2022), held that Tesla's attempt to obtain releases from putative class members was misleading and coercive, and that a protective order including notice to the putative class was warranted, even though the named plaintiffs and most (if not all) class members were bound by an arbitration agreement. In any event, Plaintiffs are also filing today a motion to amend the complaint, which will add additional lead plaintiffs who are not bound by arbitration agreements.[3] Thus, the issues raised in this complaint will proceed in court (regardless of whether arbitration is ultimately compelled for other plaintiffs or unnamed class members).

Second, Twitter argues that Plaintiffs have not established that the Court should intervene under Rule 23(d). Twitter seeks to justify its behavior by pointing out that it began to prepare separation agreements before this case was filed, rather than as a strategic reaction to this lawsuit. However, the whole reason that Plaintiffs included a request for declaratory relief in their complaint and sought emergency relief at the outset of this case, was that Elon Musk has a history of having full releases solicited from employees who are being terminated in order to defuse litigation. There is no difference between an employer seeking releases as a reaction to a lawsuit and an employer seeking releases, knowing that legal claims are coming. And, indeed, in this case, Plaintiffs filed the lawsuit and request for emergency relief before the releases were distributed – so as to prevent employees from unknowingly signing away their rights.[4]

Twitter also challenges the underlying merits of Plaintiffs' claims, arguing that Plaintiffs' claims are baseless and will not be able to be pursued on a classwide basis. However, this is not

---

[3]      The proposed Second Amended Complaint also asserts claims under Sections 201, 203, and 227.3 of the California Labor Code for Twitter's failure to provide employees with their final pay and expense reimbursement on the day that they were terminated. It also adds specific allegations that Elon Musk's ultimatum to remaining employees that they had to decide by November 17, 2022, whether they were willing to work intensely long hours and be "hard core" (in Musk's view, whatever that means) or would no longer have a job at Twitter, was simply a further extension of the mass layoffs which are the subject of Plaintiffs' claims in this case.

[4]      Plaintiffs sought the Court's intervention before the releases were distributed, because once employees have signed releases, it can be difficult to un-ring the bell (as described in Plaintiffs' motion, Dkt. 7, at 15).

PLAINTIFFS' REPLY IN SUPPORT OF THEIR EMERGENCY MOTION
FOR A PROTECTIVE ORDER

the time for a merits analysis. Plaintiffs have eminently viable claims, as they will describe briefly below. Twitter cannot require the Court to decide merits issues up front on an emergency basis in order to avoid having putative class members have notice of the rights they would be giving up, and information about this case filed on their behalf, should they sign the release.

Finally, Twitter argues that providing notice of this lawsuit would disserve the interests of the putative class, because Plaintiffs' motion is delaying their severance payments and could mislead them into thinking that they may obtain payments from a lawsuit that Twitter contends will not survive. In making this argument, Twitter is the proverbial "fox guarding the henhouse."[5] It is *Twitter* that seeks to avoid liability for its legal violations by inviting class members to release their claims when they know nothing about this case or their claims. In any event, no severance payments are being delayed here because Twitter has only announced its intent to offer severance to employees whose employment is continuing until January 4, 2023, or later, and the proposed severance would not be paid until after that date. Plaintiffs are simply requesting that, if Twitter distributes releases, it should include proper notice of the claims filed on behalf of these employees and give them the opportunity to make an informed choice about whether to release their claims; since this motion is being heard on December 8, 2022, such notice could easily be distributed before January 4, 2023. It is also ironic that Twitter contends that notice would *confuse* putative class members when the entire point of court-ordered notice is to ensure that putative class members *not be confused.* Plaintiffs simply ask that the Court order such notice that would provide putative class members with fair and accurate information about their rights and the claims asserted on their behalf.

---

[5]   See In re Organogenesis Sec. Litig., 241 F.R.D. 397, 410-11 (D. Mass. 2007) (noting courts' skepticism of defendants who claim to be advancing the rights of a putative class by opposing efforts by class counsel to protect those rights).

PLAINTIFFS' REPLY IN SUPPORT OF THEIR EMERGENCY MOTION
FOR A PROTECTIVE ORDER

## II.    ARGUMENT

### A.    The Court Should Address this Emergency Motion Immediately in Order to Preserve the Status Quo in this Matter

Rather than addressing the legitimate concerns generated by Twitter's expressed intention to obtain full releases form its employees during the pendency of this class action lawsuit, Twitter begins by engaging in *ad hominem* attacks against Plaintiffs' counsel, arguing that Plaintiffs seek to misuse Fed. R. Civ. P. 23(d) to stir up litigation.[6] Notably, Twitter **does not deny** that it seeks to short-circuit the claims that have been filed in this case by seeking to collect releases of those claims from employees before they are litigated – and without employees having any reason to know that they have legal claims to higher compensation than Twitter has stated that it will be offering and that these claims have already been filed on their behalf.

Instead, Twitter seeks to divert this Court's attention by invoking the shield of arbitration. Shortly before filing its Opposition to Plaintiffs' Motion for a Protective Order, Twitter filed a Motion to Compel Arbitration (Dkt. 18) of all claims in this case. As explained in Plaintiffs' opposition to Twitter's request to shorten time for that motion to be heard (Dkt. 24), the Court should hear and decide Plaintiffs' emergency motion before Twitter's motion to compel arbitration. As it stands, Plaintiffs' motion is scheduled to be heard on December 8, 2022, and Twitter's motion is scheduled to be heard on January 12, 2023. There is no reason at this time to disturb that schedule. Further, as noted above, Plaintiffs are today moving to amend the complaint to add several named plaintiffs who opted out of arbitration. Given that this case is in its infancy, the Court should grant that motion. As a result, Plaintiffs do not expect that this case would be dismissed in favor of arbitration (as occurred with the <u>Tesla</u> case).[7] Plaintiffs also

---

[6]    This allegation is untrue. Plaintiffs merely seek to prevent Twitter from doing away with the putative class members' claims without their knowing of their existence.

[7]    Twitter argues that the <u>Tesla</u> case supports its position because there the case was dismissed prior to the notice being issued. However, what is relevant to Plaintiffs' motion here is that the plaintiffs' motion in <u>Tesla</u> for corrective notice **was granted**. But here, unlike in <u>Tesla</u>, Plaintiffs do not expect the case to be dismissed based on the plaintiffs having all signed arbitration agreements since this case may now proceed with named plaintiffs who are unquestionably not bound by an arbitration agreement.

intend to move to add PAGA claims to this case, once the requisite waiting period has elapsed, thus providing another basis for this case to proceed in court (regardless of the enforceability of Twitter's arbitration agreement).[8]

In any event, the Court should reject Twitter's argument, even if such amendment had not been requested. Twitter is seeking to compel arbitration with the goal of sending Plaintiffs' claims to private, confidential arbitration so that thousands of putative class members will never learn of the existence of this lawsuit or the claims that have been asserted on their behalf. But Plaintiffs here simply seek a protective order maintaining the status quo prior to any decisions being made about arbitration, so that Twitter cannot unduly undermine the putative class members' ability to pursue their claims. The employees should be able to learn of their potential claims, even if ultimately they have to be heard in arbitration, as the court in <u>Tesla</u> recognized, rejecting the same arguments that Twitter makes here. <u>See</u> <u>Tesla</u>, 2022 WL 4295295, at *1-4.

Twitter asserts, however, that affording these employees relief under Rule 23(d) would stand in contravention to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.* Not so. The Ninth Circuit has held that courts have the authority to order relief to preserve the status quo even if a case is ultimately compelled to arbitration. <u>See</u> <u>Toyo Tire Holdings of Americas Inc. v. Continental Tire North America, Inc.</u>, 609 F.3d 975, 981 (9th Cir. 2010) (explaining that a court has the authority to grant preliminary relief on arbitrable claims "if interim relief is necessary to

---

[8]    Plaintiffs Cornet and Camacho have submitted letters to the California Labor & Workforce Development Agency ("LWDA"), detailing their California claims against Twitter on November 16, 2022, and intend to move (following the requisite waiting period) to amend the complaint to assert a representative claim seeking civil penalties against Twitter under the California Private Attorney General Act of 2004 ("PAGA"), Cal. Lab. Code § 2699 *et seq.* Plaintiffs. Thus, even if these plaintiffs are ultimately compelled to arbitrate their individual claims, including individual PAGA claims, in light of <u>Viking River Cruises, Inc. v. Moriana</u>, 142 S. Ct. 1906, 1923-24 (2022), it is an open question of law in California whether they could still pursue the *representative* aspect of their claims in court. This question is currently pending before the California Supreme Court in <u>Adolph v. Uber Technologies</u>, S274671, Order Granting Review (Cal. Aug. 1, 2022). Therefore, the anticipated addition of these PAGA claims also casts in further doubt the specter that this entire case could ultimately be dismissed (or stayed) by virtue of Twitter's motion to compel arbitration.

PLAINTIFFS' REPLY IN SUPPORT OF THEIR EMERGENCY MOTION
FOR A PROTECTIVE ORDER

preserve the status quo and the meaningfulness of arbitration") (collecting cases from the Sixth, Second, Third, Tenth, Fourth, Seventh, and Eighth Circuits).[9]

Indeed, Twitter's arbitration agreement itself appears to recognize that Plaintiffs have the right to seek preliminary relief in court.[10] See Direct Biologics, LLC v. McQueen, 2022 WL 1693995, at *5 (W.D. Tex. May 26, 2022) (where an arbitration permits parties "to seek preliminary relief in court," a motion to compel arbitration does not divest the court to jurisdiction to grant preliminary relief).

In O'Connor, the court addressed a virtually identical argument with respect to the interaction between Rule 23(d) and the FAA that Twitter advances here and firmly rejected it:

Uber's argument that Plaintiffs' requested relief somehow pits the Federal Arbitration Act ("FAA") against Rule 23(d), wherein the latter should yield, is meritless. Neither *Concepcion* nor the FAA abrogates Rule 23(d). *Concepcion* imposed limitations on state

---

[9]     See also Teleport Mobility, Inc. v. Sywula, 2021 WL 858438 (N.D. Cal. March 7, 2021) (enjoining defendant from destroying evidence prior to addressing a motion to compel arbitration in order to maintain the status quo); Rogers v. Lyft, Inc., 452 F. Supp. 3d 904, 912 (N.D. Cal.) (noting that preliminary interim relief "and arbitration are not incompatible; indeed, sometimes the parties' agreement to arbitrate can be vindicated only if a court issues interim relief") (citing PMS Distributing Co. v. Huber & Suhner, A.G., 863 F.2d 639, 641 (9th Cir. 1988); O'Connor v. Uber Technologies, Inc., 2013 WL 6407583, at *4-7 (N.D. Cal. Dec. 6, 2013) (issuing a protective order early in the case under Rule 23(d) - *prior* to addressing a motion to compel arbitration - in light of Uber's misleading coercive conduct of issuing arbitration agreements on an *ex parte* basis to putative class members). As the Ninth Circuit explained, the ability of courts to issue this kind of relief in fact **advances** the purposes of the FAA: "[T]he congressional desire to enforce arbitration agreements would frequently be frustrated if the courts were precluded from issuing preliminary injunctive relief to preserve the status quo pending arbitration, and *ipso facto*, the meaningfulness of the arbitration process." Toyo Tire, 609 F.3d at 980. See also Janvey v. Alguire, 647 F.3d 585, 595 (5th Cir. 2011) ("[T]he district court merely sought to preserve the status quo *before* deciding the motion to compel arbitration, and by doing so they sought to preserve the meaningfulness of any arbitration that might take place"); Teradyne v. Mostek Corp., 797 F.2d 43, 51 (1st Cir. 1986).

[10]     The arbitration agreement states: "A party may apply to a court of competent jurisdiction for temporary or preliminary injunctive relief in connection with an arbitrable controversy, but only upon the ground that the award to which that party may be entitled may be rendered ineffectual without such provisional relief." Cornet Arb. Agreement ¶ 4, Exhibit E to Callagher Decl., Dkt. 18-1. Such relief would certainly be ineffectual later, if potential class members have released their claims by then, not realizing that they have them. Moreover, "courts may issue injunctions preserving the status quo pending arbitration even when arbitration provisions do not expressly allow the parties to pursue this relief." See Holyfield v. Julien Entertainment.com, Inc., 2012 WL 58783860, at *3 n. 2 (C.D. Cal. Nov. 21, 2012).

law—California common law relating to the contractual defense to unconscionability—which would have effectively barred enforcement of an arbitration agreement. The Court did not address the ability of the district court under Rule 23(d) to control communication which would lead to an arbitration agreement in the midst of a class action lawsuit . . . .

Uber's citation to *American Exp. Co. v. Italian Colors Restaurant,* 133 S. Ct. 2304, 2306-2307 (2013) for the proposition that Rule 23 must yield to the FAA is unavailing. While *Italian Colors* affirms that an otherwise valid arbitration agreement cannot be refused enforcement simply because it would undermine the efficacy of a class action, the Court did not discuss Rule 23(d) and the district court's ability to control communications with the class thereunder. *Italian Colors* is inapposite to the issue at bar. The issue now before this Court is not the substantive validity of an arbitration provision, but whether, as a procedural matter, a court may regulate an employer's attempt to impose an arbitration requirement and waiver of legal rights during the course of a class action lawsuit. Neither *Concepcion* nor *Italian Colors* addressed this question.

O'Connor, 2013 WL 6407583, at *3-4.[11] It is thus clear that this Court can and should issue a protective order to maintain the status quo by preventing Twitter from soliciting putative class members to release their claims on an *ex parte* basis, without proper notice of their rights and the claims that have been filed on their behalf.

Likewise, the recent decision in Tesla, 2022 WL 4295295, at *1-4, addressed nearly identical conduct by Tesla, another company owned by Elon Musk. To briefly recount, in that case Tesla engaged in mass layoffs without providing WARN Act notice or pay in lieu of notice, and then sought to obtain releases of claims from employees in exchange for payments less than the plaintiffs in the case alleged they were owed. See id. The court ordered that the employees should receive notice of the pending litigation, so that they would not be put in the position of

---

[11]     Twitter points out that the Ninth Circuit reversed the district court's Rule 23(d) order in O'Connor v. Uber Technologies, Inc., 904 F.3d 1087, 1094-95 (9th Cir. 2018). However, in O'Connor, the district court took the exact approach that Plaintiffs urge here, which was to consider the plaintiffs' emergency motion for a protective order ***prior to*** any determination regarding whether to compel the plaintiffs' claims to arbitration. See O'Connor, 2013 WL 6407583, at *4-7. It was not until **five years later** that the Ninth Circuit held that the class of drivers' claims should indeed be compelled to arbitration. See O'Connor, 904 F.3d at 1094-95. The earlier decision – through which Uber was ordered to provide enhanced specific notice to drivers about the claims that had been asserted on their behalf and make it easier for them to opt out of arbitration if they chose to – permitted more drivers to opt out of arbitration long before the court ultimately ruled on the enforceability of the arbitration clause. See O'Connor, 2013 WL 6407583, at *7. Nothing in the Ninth Circuit's decision that later held that order to be moot undermined the propriety of the district court's original decision to address the plaintiffs' Rule 23(d) motion (3by more than a year) before addressing Uber's motion to compel arbitration in O'Connor v. Uber Technologies, Inc., 2015 WL 5138097 (N.D. Cal. Sept. 1, 2015).

being asked to sign away their rights when a class action had been filed on their behalf without

them having reason to know they had legal claims and a viable way to pursue them. See id. at *4.

The court held that Tesla's conduct was "misleading because [the separation agreements] fail to

inform potential class members of this lawsuit and the rights that they are potentially giving up

under the WARN Act." Id.[12]

In arguing that the Court should address its motion to compel arbitration before

Plaintiffs' Emergency Motion, Twitter relies on Hughes v. S.A.W. Entertainment, LTD, 2017

WL 6450485, at *9 (N.D. Cal. Dec. 18, 2017), which concerned the interplay between

arbitration and the issuance of notice of a case to employees pursuant to Section 216(b) of the

---

[12]      Twitter contends that Tesla actually supports its argument, because the district court
judge ultimately dismissed the case prior to the notice being disseminated to putative class
members. However, the Tesla case was later dismissed from court due to a procedural quirk –
not because the district court judge agreed with Tesla that Rule 23(d) relief was not warranted,
even where the claims were ultimately compelled to arbitration.
        To clarify – in Tesla, the magistrate judge decided the plaintiffs' motion for a protective
order under Rule 23(d) before addressing Tesla's motion to compel arbitration, ordering Tesla to
provide notice of the case "until the merits of Plaintiffs' claims are resolved in federal court or in
arbitration proceedings. See Tesla, 2022 WL 4295295, at *4. Ten days later, the magistrate judge
issued a report and recommendation that Tesla's motion to compel arbitration should be granted,
because the arbitration agreement had delegated arbitrability questions to the arbitrator. See
Lynch v. Tesla, Inc., 2022 WL 44766783, at *2-5 (W.D. Tex. Sept. 26, 2022). That same day,
Tesla filed an objection to the magistrate judge's Rule 23(d) order. See Tesla, Civ. Act. No. 22-
cv-00597-RP, Dkt. 38 (W.D. Tex. Sept. 26, 2022). Tesla also requested that the district court
judge stay the magistrate judge's order (Tesla Dkt. 39), which the district court judge granted
"until Plaintiffs can respond to the emergency motion." (Tesla Dkt. 40). Thus, the Tesla plaintiffs,
who are represented by the undersigned counsel, began to prepare their opposition to Tesla's
objection to the Rule 23(d) order, under the belief that regardless of whether the case had been
compelled to arbitration, the district court judge would appropriately address the validity of
Tesla's objection following the completion of briefing. However, on October 13, 2022, the
district court judge dismissed the case in its entirety in light of the grant of Tesla's motion to
compel arbitration. (Tesla Dkts. 46 and 47.) The Tesla plaintiffs submitted a motion for
reconsideration and clarification, explaining that it was premature for the case to be dismissed
given that the district court judge had never ruled on Tesla's objection to the magistrate judge's
Rule 23(d) order (Tesla Dkt. 48). Indeed, the deadline had not even passed for the plaintiffs to
submit their response to Tesla's objection. Nevertheless, the district court judge denied the
plaintiffs' motion for reconsideration and clarification, concluding that Plaintiffs had not
objected to the magistrate's report and recommendation that the case should be compelled to
arbitration and dismissed (Tesla Dkt. 51). Again, though, the plaintiffs never understood the
magistrate's report and recommendation to mean that the Rule 23(d) order would not remain in
effect. As such, the plaintiffs have now appealed the dismissal to the Fifth Circuit. See Lynch v.
Tesla, Inc., No. 22-51018 (5th Cir.).

PLAINTIFFS' REPLY IN SUPPORT OF THEIR EMERGENCY MOTION
FOR A PROTECTIVE ORDER

Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* In <u>Hughes</u>, the court rejected

plaintiffs' request for notice to issue under Section 216(b) prior to deciding the defendants'

motion to compel the plaintiffs' to arbitration. <u>Hughes</u>, however, was both incorrect and an

outlier. The strong weight of authority demonstrates that courts routinely address such

preliminary issues (such as the issuance of FLSA notice) prior to addressing the enforceability

of arbitration clauses.[13]

---

[13]    <u>See, e.g.</u>, <u>Campanelli v. Image First Healthcare Laundry Specialists, Inc.</u>, 2018 WL 6727825, at *9 (N.D. Cal. Dec., 2018) (holding that "even though the vast majority of this action's putative plaintiffs appear to be subject to an enforceable arbitration agreement, this court may not preemptively deny FLSA certification or narrow the scope of the proposed collective . . . ."); <u>Grove v. Iowa Playhouse et al.</u>, 1:20-cv-0027-SMR-CFB, Dkt. 27, at *3-5 (W.D. Iowa Apr. 21, 2021); <u>Filho v. OTG Mgmt., LLC</u>, 2021 WL 1191817, *6-7 (S.D.N.Y. Mar. 30, 2021); <u>Herrera v. EOS IT Management Solutions, Inc.</u>, 2020 WL 7342709, *10 (N.D. Cal. Dec. 14, 2020); <u>Grove v. Meltech, Inc.</u>, 2020 WL 7133568, at *4 (D. Neb. Dec. 3, 2020); <u>Vallone v. CJS Sols. Grp., LLC</u>, 437 F. Supp. 3d 687, 691-92 (D. Minn. 2020), <u>aff'd</u>, 9 F.4th 861 (8th Cir. 2021); <u>Lancaster v. FQSR</u>, 2020 WL 5500227, *6-7 (D. Md. Sept. 11, 2020); <u>Agerkop v. Sisyphian LLC</u>, 2020 U.S. Dist. LEXIS 207887, *8-9 (C.D. Cal. Aug. 18, 2020); <u>Parker v. Battle Creek Pizza, Inc.</u>, 2020 WL 4345010, *2 (W.D. Mich. July 24, 2020); <u>Bradford v. Team Pizza, Inc.</u>, 2020 WL 3496150, *5 (S.D. Ohio June 29, 2020); <u>Delara v. Diamond Resorts</u>, 2020 WL 2085957, at *5-6 (D. Nev. Apr. 30, 2020); <u>Cuevas v. ConAm Management Corp.</u>, 2019 WL 5320544, *4-5 (S.D. Cal. Oct. 21, 2019); <u>Barone v. LAZ Parking Ltd., LLC</u>, 2019 WL 5328832, at *6 (D. Conn. Oct. 20, 2019); <u>Lijun Geng v. Shu Han Ju Rest. II, Corp.</u>, 2019 WL 4493429, *9 (S.D.N.Y. Sept. 6, 2019); <u>Monplaisir v. Integrated Tech Group, LLC</u>, 2019 WL 3577162, *3 (N.D. Cal. Aug. 6, 2019); <u>Camp v. Bimbo Bakeries USA, Inc.</u>, 2019 WL 1472586 (D.N.H. Apr. 3, 2019); <u>Mode v S-L Distrib. Co., LLC</u>, 2019 WL 1232855, *4 n. 3 (W.D.N.C. Mar. 14, 2019); <u>Gathmann-Landini v. Lululemon USA Inc.</u>, 2018 WL 3848922, at *1 n. 2 (E.D.N.Y. Aug. 13, 2018); <u>Brooks v. C.H. Robinson International, Inc.</u>, 2017 WL 10506772, at *3 (W.D. Mo. May 9, 2017); <u>Varghese v. JP Morgan & Chase Co.</u>, 2016 WL 4718413, at *9 (S.D.N.Y. Sept. 8, 2016); <u>Racey v. Jay-Jay Cabaret, Inc.</u>, 2016 WL 3020933, at *5 (S.D.N.Y. May 23, 2016); <u>Williams v. Omainsky</u>, 2016 WL 297718, at *8 (S.D. Ala. Jan. 21, 2016) ("By signing the [arbitration] Agreement, putative opt-in plaintiffs did not forfeit the right to receive notice of this litigation…"); <u>Romero v. La Revise Associates LLC</u>, 968 F. Supp. 2d 639, 647 (S.D.N.Y. 2013); <u>Davis v. NovaStar Mortg., Inc.</u>, 408 F. Supp. 2d 811, 818 (W.D. Mo. 2005).

   Twitter also cites to <u>In re JPMorgan Chase & Co.</u>, 916 F.3d 494, 502 (5th Cir. 2019), where the Fifth Circuit declined to issue Section 216(b) notice before deciding a motion to compel arbitration. But that decision is not binding on this Court. And, in any event, preventing deceptive collection of releases is a more pressing issue than allowing putative collective action members the opportunity to join a case. Plaintiffs here are not seeking notice authorizing class members to join this case; rather Plaintiffs seek to enjoin Twitter's conduct in deceptively seeking releases without notifying putative class members of their rights or the claims filed on their behalf.

   Twitter's citations to <u>Sandbergen v. Ace Am. Ins. Co.</u>, 2019 WL 13203944, at *4 (N.D. Cal. June 17, 2019), and <u>Droesch v. Wells Fargo Bank, N.A.</u>, 2021 WL 2805604, at *2 (N.D.

PLAINTIFFS' REPLY IN SUPPORT OF THEIR EMERGENCY MOTION
FOR A PROTECTIVE ORDER

As these cases demonstrate, courts across the country have authorized notice and denied or deferred ruling on motions to compel arbitration, motions to dismiss, and motions for summary judgment that are based on the alleged arbitrability of the claims. Courts have consistently recognized that sending notice to workers whose rights have been potentially violated is justified even in the face of an arbitration agreement – that way, workers will be aware of their claims and can pursue them even if ultimately in arbitration.[14]

Twitter's opposition also includes several other arguments that should be rejected. **First**, Twitter argues that Plaintiffs are bound by arbitration agreements and thus have no standing to assert claims on behalf of the putative class members. However, in rejecting a similar argument, the court in Portillo v. National Freight, Inc., where the defendant had argued that the named plaintiffs in a class action lacked standing to defend absent class members from the assertion of counterclaims, the court explained, "[d]ue to the representative nature of class actions and the class representatives' obligation to "vigorously represent" all class members, "[w]hether or not the named plaintiff who meets individual standing requirements may assert the rights of absent class members is not a standing issue, but depends rather on meeting the prerequisites of Rule 23." 2021 WL 1884892, at *3 (D.N.J. May 11, 2021). The very purpose of being a named plaintiff in a class action is to advance the rights of class members. Furthermore, the Court's authority to limit misleading or coercive communications under Rule 23 does not depend on the presence of a certified class. See Friedman v. Intervet Inc., 730 F. Supp. 2d 758, 762 (N.D. Ohio 2010) ("A defendant's failure to mention **even an uncertified class action** in securing

---

Cal. July 6, 2021), are likewise distinguishable. Both of those cases hinged on the fact that the courts had already ruled on the enforceability of the arbitration agreements at issue there. See Droesch, 2021 WL 2805604, at *2.

[14]   Here, the putative class members' interests are even stronger than the interests of a putative class in receiving Section 216(b) notice in an FLSA case. When deciding whether to authorize notice under Section 216(b), a court is deciding whether to allow putative class members to join a case. Here, Plaintiffs are simply seeking to ensure that putative class members not be put in the position of being asked to **release** their claims, without even being **aware** of the claims filed on their behalf.

PLAINTIFFS' REPLY IN SUPPORT OF THEIR EMERGENCY MOTION
FOR A PROTECTIVE ORDER

settlements or releases from putative class members may be 'misleading.'") (emphasis added).[15]

In any event, as Plaintiffs have noted, they are now moving to amend to add named plaintiffs who opted out of arbitration and thus cannot have their claims compelled to arbitration, regardless of what the Court concludes regarding the enforceability of Twitter's arbitration agreement. The presence of these plaintiffs in the case undermines Twitter's standing argument.

### B.  The Relief that Plaintiffs Seek is Appropriate Given the Circumstances Presented by Twitter's Conduct

Twitter argues further that Plaintiffs' request that the Court issue Rule 23(d) relief is unprecedented, because Plaintiffs have engaged in a "preemptive strike." Twitter claims this case is different from those Plaintiffs have cited because, here, Twitter did not initiate a strategic campaign to wipe out the class by seeking releases in response to a pending lawsuit. Instead, according to Twitter, this case is different because it was already preparing to send severance and release agreements to impacted employees prior to Plaintiffs' filing.

This is a distinction without a difference and, in making this argument, Twitter articulates Plaintiffs' point. First, the facts of this case are no different from the facts of the Tesla case, where the employer conducted layoffs and then sought releases from employees, and ***then*** plaintiffs filed a case and a request for notice to prevent further seeking of releases without employees receiving notice of the case filed on their behalf. Further, from the start of this case, Plaintiffs were aware of Musk's past conduct with layoffs at Tesla. They immediately sought declaratory relief to address their strong concern that "Twitter will engage in similar behavior [as Musk did in Tesla] and seek releases from laid off employees without informing them of their

---

[15]    See also Maney v. Brown, 2021 WL 3598532, at *2 (D. Or. Aug. 13, 2021) ("in certain circumstances, Rule 23(d) of the Federal Rules of Civil Procedure 'approves discretionary notice to potential class members prior to the district court's determination whether the action should proceed as a class action.'") (quoting Pan Am. World Airways, Inc. v. U.S. Dist. Ct. for Cent. Dist. of California, 523 F.2d 1073, 1077 (9th Cir. 1975)); Jones v. Jeld-Wen, Inc., 250 F.R.D. 554, 560 (S.D. Fla. 2008) (rejecting the defendant's claim that the court lacked discretion under Rule 23(d) to issue relief "pre-certification"); see also Kutzman v. Derrel's Mini Storage, Inc., 2018 WL 6625791, at *8 (E.D. Cal. Dec. 18, 2018) ("[T]he Court cannot countenance Defense counsel's actions in attempting to mislead and coerce Defendant's current and former employees into settling prior to certification, possibly adverse to their interests.").

rights or the pendency of his case." (Compl. ¶ 1, Dkt. 1.) Twitter claims that Plaintiffs did not know what would happen when they made their allegations, but in fact they did. When they filed their original complaint, it was clear to them that Twitter had already begun to engage in WARN Act violations for some of its employees (like Plaintiff Cornet). And by the time Plaintiffs filed their First Amended Complaint[16], Musk had already announced that the employees would be receiving severance agreements containing releases in exchange for one month's pay. As Plaintiffs anticipated, Musk indeed followed his same playbook from Tesla.

Moreover, Twitter attempts to draw a distinction between its own conduct and the conduct of defendants in cases that Plaintiffs rely on such as Guifu Li v. A Perfect Day Fran., Inc., 270 F.R.D. 509, 518 (N.D. Cal. 2010), and County of Santa Clara v. Astra USA, Inc., 2010 WL 2724512, at *5-6 (N.D. Cal. July 8, 2010), by arguing that Twitter began preparing separation agreements as a standard business practice in conjunction with layoffs rather than as a strategic reaction to litigation. But it does not matter what the reason is for the threatened distribution of releases. Regardless of whether Twitter began preparing separation agreements prior to the filing of this lawsuit, the fact remains that it intended to (and without Plaintiffs' action in filing this case and emergency motion would have) distributed these releases to the employees. Twitter prepared to collect releases in obvious anticipation of litigation, hoping to get as many employees as possible to sign full releases of claims quickly. And now that this lawsuit has been filed, and the employees are putative class members, such communications are misleading and coercive, making appropriate a protective order under Rule 23(d).[17]

---

[16]    When Plaintiffs had filed their initial Complaint, Plaintiff Cornet had been laid off (without receiving WARN Act notice), and Plaintiffs De Caires, Pan, and Kindel had been locked out of their company accounts, leading them to reasonably believe that they too were being laid off without WARN Act notice. (Compl. ¶¶ 22-23, Dkt. 1.) When it later became apparent that Twitter had in fact provided De Caires, Pan, and Kindel with WARN Act notice, but that they had claims against it for breach of contract and promissory estoppel, Plaintiffs amended their complaint accordingly. (First Am. Compl., Dkt. 6.)

[17]    Twitter's citation to In re Blackbaud, 2020 WL 1137885, at *4 (D.S.C. April 18, 2022), also does not help its argument. In that case, the plaintiffs asked the court to disseminate

### C.   Twitter's Challenges to the Validity of Plaintiffs' Underlying Claims Are Premature and Need Not be Decided at this Stage

In opposing Plaintiffs' motion, Twitter also challenges the validity of Plaintiffs' underlying claims. Twitter jumps the gun by asking the Court to now make substantive merits decisions as to whether Plaintiffs can ultimately maintain a class action, whether class certification will be appropriate, and whether Plaintiffs' claims will ultimately succeed. At this point, Plaintiffs are merely requesting that the Court issue an order maintaining the status quo by stopping Twitter from obtaining releases without putative class members even knowing of the claims that have been filed on their behalf. As explained above, this type of relief is contemplated by Rule 23(d), the FAA, and Twitter's arbitration agreement itself.

For example, Twitter challenges Plaintiffs' federal and California WARN Act claims because *some* Plaintiffs received WARN Act notice. However, the complaint (both the original and amended versions) make clear the allegation that not *all* employees who Plaintiffs contend were subject to the layoffs received WARN Act notice or pay in lieu of notice. Plaintiff Cornet alleges that he was laid off on November 1, 2022 and did not receive notice (First Am. Compl. ¶ 33, Dkt. 6).[18]

Twitter also seeks to undermine Plaintiffs' breach of contract claim by highlighting that the merger agreement that brought Twitter under Musk's ownership contained a provision purporting to disclaim third-party beneficiary status for Twitter's employees. However, Twitter ignores that Plaintiffs' complaint also includes a breach of contract between Twitter and its

_____

"corrective notice to Blackbaud's customers" who were not even putative class members. Id. at *3. That notice would include corrections of alleged misrepresentations by the defendant that were "disputed issues at the crux" of the argument on the merits. See id. at *4. As such, the court ruled that Rule 23(d) relief was inappropriate. Those facts are different from this case, where Plaintiffs seek to provide notice to putative class members simply to inform them of this case and the claims asserted.

[18]     Twitter argues that Plaintiff Cornet was terminated for cause, but Cornet contends that he was simply chosen to be one of the first of the mass layoffs. See Kephart v. Data Systems Intern., Inc., 243 F. Supp. 2d 1205, 1224-25 (D. Kan. 2003) (treating the question of whether affected employees have experienced an "employment loss" sufficient to trigger the WARN Act as a question of fact).

PLAINTIFFS' REPLY IN SUPPORT OF THEIR EMERGENCY MOTION
FOR A PROTECTIVE ORDER

employees directly. (First Am. Compl., Count I.) Also, under their third-party beneficiary claim, Plaintiffs will argue that the allegedly contradictory language in the merger agreement should be read against the drafter and in favor of the employees and that the alleged disclaimer of third-party beneficiary rights was not effective. Similarly, Twitter attacks Plaintiffs' promissory estoppel claims, claiming they are inappropriate for class treatment and also contending that Plaintiffs' class allegations are insufficient. Plaintiffs will oppose those arguments at the appropriate time.[19]

For present purposes, these merits arguments (and questions of the certifiability of certain claims) are premature. Twitter can raise them at the appropriate time, and Plaintiffs will oppose them in due course. It would be premature for the Court to make merits determinations in deciding whether a protective order is warranted under Rule 23(d).

### D.        A Protective Order Under Rule 23(d) Will Not Mislead Employees

Finally, Twitter repeats its argument that the Court should deny Plaintiffs' Emergency Motion, because notice regarding this case would mislead employees into believing that they can obtain relief in a purportedly soon-to-be-dismissed lawsuit.

Twitter asks this Court to assume that providing notice of the claims in this case to Twitter's employees will cause confusion and result in improper solicitation while failing to recognize that notice is necessitated by Twitter's ***own misleading conduct and stated goal of soliciting full releases***. It should not be lost on the Court that Twitter is expressing concerns about confusing its employees when the reason for Plaintiffs' motion is that it is Twitter who wants to mislead employees into signing releases, without having knowledge of their claims raised here. A protective order would not be a solicitation for employees to join a suit (as a

---

[19]        In appropriate cases, courts have certified promissory estoppel claims. See, e.g., Paschal v. Child Development, Inc., 2014 WL 112214, at *4-7 (E.D. Ark. Jan. 10, 2014). With respect to Twitter's challenge to Plaintiffs' class allegations, Plaintiffs believe they have met the pleading standard, which requires simply 0"a short and plain statement of the claim showing that [they] are entitled to relief," including class allegations, sufficient to demonstrate plausibility. Cheng v. Activision Blizzard, Inc., 2022 WL 2101919, at *6 (C.D. Cal. April 18, 2022).

PLAINTIFFS' REPLY IN SUPPORT OF THEIR EMERGENCY MOTION
FOR A PROTECTIVE ORDER

notice under Section 216(b) would be in an FLSA case). Plaintiffs merely seek to stop Twitter from attempting to obtain releases from its employees who do not know of the existence of this case and the claims asserted here on their behalf. Once receiving proper notice that informs them of their rights in this case, together with an offer of severance, Twitter employees are perfectly capable of making their own decisions about whether to accept the severance or whether they wish to contact counsel to better understand their rights and pursue them; there is nothing improper about providing such corrective notice, rather the caselaw supports it. Twitter's claim that Plaintiffs' counsel are somehow not protecting the employees assumes the position of the fox guarding the henhouse, which courts have cautioned against. See note 5.

## III.    CONCLUSION

For the foregoing reasons, and for the reasons articulated in Plaintiffs' Emergency Motion (Dkt. 7), the Court should enter a protective order barring Twitter from seeking separation agreements from employees on whose behalf this lawsuit has been filed, without giving them sufficient notice of this action and ample opportunity to learn of their claims.

Respectfully submitted,

EMMANUEL CORNET, JUSTINE DE CAIRES, GRAE KINDEL, ALEXIS CAMACHO, AND JESSICA PAN, on behalf of themselves and all others similarly situated,

By their attorneys,

 /s/ Shannon Liss-Riordan_____
Shannon Liss-Riordan, SBN 310719
Thomas Fowler (*pro hac vice* forthcoming)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Email: sliss@llrlaw.com; tfowler@llrlaw.com

PLAINTIFFS' REPLY IN SUPPORT OF THEIR EMERGENCY MOTION
FOR A PROTECTIVE ORDER

Dated:        November 23, 2022

## **CERTIFICATE OF SERVICE**

I, Shannon Liss-Riordan, hereby certify that on November 23, 2022, a true and accurate copy of this document was served on Defendant Twitter, Inc. via filing on the Court's CM/ECF system.

/s/ Shannon Liss-Riordan
Shannon Liss-Riordan

PLAINTIFFS' REPLY IN SUPPORT OF THEIR EMERGENCY MOTION
FOR A PROTECTIVE ORDER