UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMMANUEL CORNET, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>TWITTER, INC.,<br><br>Defendant. | Case No. 3:22-cv-06857-JD<br><br>**ORDER RE ARBITRATION** |

Named plaintiffs Emmanuel Cornet, Justine De Caires, Grae Kindel, Alexis Camacho, and Jessica Pan sued defendant Twitter, Inc., on behalf of themselves and a putative class of other Twitter employees, alleging that recent layoffs by Twitter violated federal and state laws. Dkt. No. 1 (original complaint); Dkt. No. 40 (second amended complaint). Twitter asks for an order compelling the individual claims of these named plaintiffs to arbitration pursuant to the parties' arbitration agreements and the Federal Arbitration Act (FAA). Dkt. No. 18.[1] Plaintiffs filed an opposition. Dkt. No. 37. Arbitration is granted.

**BACKGROUND**

The salient facts are undisputed. Plaintiffs signed arbitration agreements as part of their employment contracts with Twitter, which date from September 2017 to April 2021. Dkt. No. 18-1, Ex. A (Kindel), Ex. B (Camacho), Ex. C (De Caires), Ex. D (Pan), Ex. E (Cornet). The

---

[1] After Twitter filed its motion, plaintiffs amended their complaint to add three named plaintiffs who say that they opted out of Twitter's arbitration agreement. Dkt. No. 40 ¶ 14-16. The claims of these three individuals are not at issue in this motion. For ease of reference, "plaintiffs" refers only to the five named plaintiffs who are the subject of Twitter's motion.

agreements state in bold that "[a]rbitration is not a mandatory condition of Employee's employment at [Twitter]," and provided plaintiffs with an opportunity to opt out. *Id.* at ECF pp. 25, 35, 44. Plaintiffs did not opt out. *See id.* at ECF p. 7 ¶ 8 (Callaghan declaration).

Twitter has identified three versions of the agreements, *see* Dkt. No. 18 at 3, but the relevant provisions are materially the same. The arbitration agreements all expressly state that they are governed by the FAA. *See* Dkt. No. 18-1 at ECF pp. 23, 33, 42. They cover disputes "arising out of or related to" plaintiffs' employment with Twitter, including the termination of their employment. *Id.* Each agreement states that it applies to "disputes arising out of or relating to [the] interpretation or application of this Agreement, including the enforceability, revocability or validity of the Agreement or any portion of the Agreement." *Id.* Each agreement also contains a class action waiver, the validity and enforceability of which can only be determined by a "court of competent jurisdiction and not by an arbitrator." *Id.* at ECF pp. 24-25, 34, 43. The waiver requires the parties "to bring any dispute in arbitration on an individual basis only, and not on a class, collective, or private attorney general representative action basis." *Id.*

## LEGAL STANDARDS

The arbitration demand is governed by the FAA. The Court has discussed the governing standards in several prior orders, which are incorporated here. *See Louis v. Healthsource Glob. Staffing, Inc.*, No. 22-cv-02436-JD, 2022 WL 4960666 (N.D. Cal. Oct. 3, 2022); *Williams v. Eaze Sols., Inc.*, 417 F. Supp. 3d 1233 (N.D. Cal. 2019). In pertinent part, the FAA's "overarching purpose . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). Under Section 4 of the FAA, the Court's role "is limited to determining whether a valid arbitration agreement exists and, if so, whether the agreement encompasses the dispute at issue." *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). If the party seeking to compel arbitration establishes both factors, the district court "must order the parties to proceed to arbitration only in accordance with the terms of their agreement." *Id.* "Any doubts about the scope of arbitrable issues should be decided in favor of arbitration." *Williams*, 417 F. Supp. 3d at 1239; *see also Louis*, 2022 WL 4960666, at *2.

Unless the parties provide otherwise, the validity and scope of an agreement to arbitrate are determined by the Court. *See Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013); *Alonso v. AuPairCare, Inc.*, No. 3:18-cv-00970-JD, 2018 WL 4027834, at *1 (N.D. Cal. Aug. 23, 2018). The validity inquiry usually involves a determination of whether the arbitration agreement is unenforceable because it is unconscionable. *See Concepcion*, 563 U.S. at 339.

Alternatively, parties may delegate "gateway" questions of arbitrability to an arbitrator. *See Alonso*, 2017 WL 4551484, at *1. A delegation clause is enforceable when it manifests a clear and unmistakable agreement to arbitrate arbitrability, and is not invalid as a matter of contract law. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). Challenges to the validity of a delegation clause may be directed to (1) "the validity of the delegation clause itself," or (2) "the validity of the agreement to arbitrate or to the contract as a whole." *McLellan v. Fitbit, Inc.*, No. 3:16-cv-00036-JD, 2017 WL 4551484, at *1 (N.D. Cal. Oct. 11, 2017) (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006)). "[T]he Court retains authority to determine any validity challenges directly addressed to delegation." *Alonso*, 2018 WL 4027834, at *1 (citing *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 72 (2010)). But "[i]f a party challenges the overall agreement to arbitrate, without specifically challenging the delegation clause, the questions of validity and enforceability will go to the arbitrator." *Id.* (citing *McLellan*, 2017 WL 4551484, at *1).

## DISCUSSION

Plaintiffs' main objection is that the arbitration agreements are unconscionable. *See* Dkt. No. 37 at 5-6. They do not raise any contract formation issues. Twitter provided signed copies of the agreements, and they are all clear and straightforward. *See generally* Dkt. No. 18-1. Because each arbitration agreement has a delegation clause, plaintiffs must show that the clause is invalid or otherwise does not encompass their unconscionability claims in order to litigate in this forum.

They have not done so. Plaintiffs relegated this threshold issue to a footnote, and say only that the delegation clauses "are not clear and unmistakable" because they do not "actually state that questions of arbitrability are delegated to the arbitrator." Dkt. No. 37 at 5 n.3.

3

The point is not well taken. To start, the delegation clauses in all three versions of the agreement state quite clearly that disputes about the enforceability and validity of the arbitration agreement are "to be resolved only by an arbitrator through final and binding arbitration." Dkt. No. 18-1 at ECF pp. 23, 33, 42. This is just the kind of language which establishes that "the parties clearly and unmistakably agreed to arbitrate the question of arbitrability." *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011) (finding adequate a delegation clause that gave "arbitrators the authority to determine 'the validity or application of any of the provisions of' the arbitration clause"); *see also Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016) (upholding delegation clause that provided arbitrators with "the authority to decide issues relating to the 'enforceability, revocability, or validity of the'" arbitration agreements).

The second and third versions of the agreement, which are applicable to De Caires, Pan, and Cornet, provide even more support for delegation. In addition to the plain delegation language discussed above, these agreements expressly provide that the parties "agree to bring any claim in arbitration before Judicial Arbitration and Mediation Services ('JAMS'), pursuant to the then-current JAMS Rules." Dkt. No. 18-1 at ECF pp. 34, 43. "JAMS procedures for employment arbitration delegate gateway issues to the arbitrator," *Alonso*, 2018 WL 4027834, at *5, and so the second and third versions have two independent grounds on which to delegate the question of arbitrability to the arbitrator.

The only remaining issue here is the enforceability of the class action waiver, which the parties reserved for the Court. Plaintiffs challenge only the portion of the waiver that precludes them from bringing "representative actions under the Private Attorneys General Act of 2004 [PAGA]." Dkt. No. 37 at 2; *see also id.* at 11. The grounds for this objection are unclear because the operative complaint does not allege a PAGA claim. Dkt. No. 40. Plaintiffs made a passing reference to "their anticipated PAGA claims," Dkt. No. 37 at 13, but the Court can only address what is presently in the record, *see Hodges v. Comcast Cable Commc'ns, LLC*, 21 F.4th 535, 541 (9th Cir. 2021) (rejecting "argument that courts should stretch to invalidate contracts based on hypothetical issues that are not actually presented in the parties' dispute"). At this time, the PAGA waiver has no bearing on going to arbitration.

**CONCLUSION**

The claims of plaintiffs Cornet, De Caires, Kindel, Camacho, and Pan are ordered to arbitration on an individual basis. The effect of this order on the putative class in the second amended complaint will be taken up later as warranted by developments in the case.

**IT IS SO ORDERED.**

Dated: January 13, 2023

JAMES DONATO
United States District Judge