Pages 1 - 22

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable James Donato, Judge

EMMANUEL CORNET, et al.,          )
                                  )
            Plaintiffs,           )
                                  )
     VS.                          )   **NO. C 22-06857-JD**
                                  )
TWITTER, INC.,                    )
                                  )
            Defendant.            )
_____ )

                         San Francisco, California
                         Thursday, December 8, 2022

                  **TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiffs:
                         LICHTEN & LISS-RIORDAN PC
                         729 Boylston Street - Suite 2000
                         Boston, Massachusetts 02116
                    BY:  **SHANNON LISS-RIORDAN, ATTORNEY AT LAW**

For Defendant:
                         MORGAN, LEWIS & BOCKIUS LLP
                         One Market - Spear Street Tower
                         San Francisco, California 94105
                    BY:  **ERIC MECKLEY, ATTORNEY AT LAW**

Reported By:  Ruth Levine Ekhaus, RMR, RDR, FCRR
              Official Reporter, CSR No. 12219

PROCEEDINGS

| | |
|---|---|
| 1 | <u>**Thursday - December 8, 2022**</u>                              <u>**1:35 p.m.**</u> |
| 2 | <u>P R O C E E D I N G S</u> |
| 3 | ---o0o--- |
| 4 | **THE CLERK:**  All rise.  This Court is now in session. |
| 5 | The Honorable James Donato presiding. |
| 6 | **THE COURT:**  Good afternoon. |
| 7 | **MR. MECKLEY:**  Good afternoon, Your Honor. |
| 8 | **MS. LISS-RIORDAN:**  Good afternoon. |
| 9 | **THE COURT:**  A little lackluster.  Must be lunch. |
| 10 | **THE CLERK:**  Please be seated. |
| 11 | Calling Civil 22-6857, Cornet versus Twitter, Inc. |
| 12 | Counsel? |
| 13 | **MS. LISS-RIORDAN:**  Good afternoon, Your Honor.  For |
| 14 | the plaintiffs, I'm Shannon Liss-Riordan. |
| 15 | **MR. MECKLEY:**  Good afternoon, Your Honor.  Eric |
| 16 | Meckley appearing on behalf of defendant. |
| 17 | **THE COURT:**  Okay.  All right.  So let me just make |
| 18 | sure I understand where we are.  Everything has been put on ice |
| 19 | pending our discussion here today; is that right? |
| 20 | **MR. MECKLEY:**  That's correct, Your Honor. |
| 21 | **THE COURT:**  Okay.  Now, Mr. Meckley, I mean, just -- |
| 22 | I'm happy to hear -- I have all your papers; spent a lot of |
| 23 | time with them.  I'm happy to hear anything you'd like to add |
| 24 | to them. |
| 25 | I have a couple of questions here, Mr. Meckley and |

**PROCEEDINGS**

1   Twitter.  So what is the -- what's the plan for the severance

2   agreements and the waivers?

3          **MR. MECKLEY:**  The plan, Your Honor, is to provide

4   severance packages to all employees who were let go or will be

5   let go as part of this reduction in force that occurred as well

6   as for employees who weren't part of the initial reduction in

7   force but who chose not to continue working for Twitter by not

8   clicking the "yes" button.

9      That group, Twitter intends to send them severance

10  packages with a release in it.

11         **THE COURT:**  Okay.  Now, is the severance calculated

12  for each person individually, or is there just a standard

13  package?

14         **MR. MECKLEY:**  It would be one month of their base pay

15  in that severance package, Your Honor.

16         **THE COURT:**  Okay.  So each person will get one month

17  of base pay?

18         **MR. MECKLEY:**  Correct.

19         **THE COURT:**  And then -- what does the waiver say?

20     Do you have a copy of it here, by the way?  Is that --

21         **MR. MECKLEY:**  Your Honor, I don't have a copy of it;

22  obviously, it's not been sent.  But the waiver and release

23  would be a general release of claims, Civil Code 1542,

24  California, and applicable other state general release

25  provisions.

**PROCEEDINGS**

 1              **THE COURT:**  Okay.  So this lawsuit was filed, was it

 2      early November?

 3              **MS. LISS-RIORDAN:**  Late the night of November 3rd,

 4      early November 4th.

 5              **THE COURT:**  Okay.  So first couple of days of

 6      November.  When did Twitter have the severance and waiver idea

 7      in place?

 8              **MR. MECKLEY:**  Before November 3rd, because it notified

 9      people on November 4th.

10          So this process was in plan well before the lawsuit was

11      filed.  And the notice of people being let go was November 4th,

12      which is less than 24 hours after this lawsuit was filed.

13              **THE COURT:**  So this was underway before you got wind

14      of the lawsuit?

15              **MR. MECKLEY:**  That's correct.

16              **THE COURT:**  All right.  Now, let me just shift to

17      plaintiff's side.

18          Ms. Liss-Riordan, what does it -- I'm not making this

19      decision now; you understand that.  But if you were to get your

20      way, what is it you would like Twitter to say?

21              **MS. LISS-RIORDAN:**  So --

22              **THE COURT:**  I mean, just specifically what would you

23      like them to say?

24              **MS. LISS-RIORDAN:**  Yes.  So I've conferred, actually,

25      with Twitter's counsel before this, and we talked about what a

1   proposed notice would look like should the Court grant our

2   motion.  And I forwarded a proposed notice.  Twitter,

3   apparently, has its own proposed notice because it doesn't

4   agree with my notice; and I've asked for a copy of it, but they

5   haven't shared that with me.

6         **THE COURT:**  Can I just jump in?

7      Do you have both of those with you right here?

8         **MS. LISS-RIORDAN:**  I don't have it with me, but I

9   could get it to the Court quickly.

10        **THE COURT:**  Well, that's okay.  Just tell me, as

11  closely as you can -- let's hear the version -- plaintiffs'

12  version and defendant's version.

13        **MS. LISS-RIORDAN:**  So plaintiffs' version lays out --

14  it looks like a notice that courts issue when courts issue a

15  notice in cases.  So it has the caption.  It explains that a

16  class action has been filed alleging the following claims.  It

17  describes briefly what those claims are.

18     It informs employees that these claims have been filed on

19  their behalf, and that I -- I don't have the exact language in

20  front of me, but essentially that they have a choice to make,

21  and they should be aware of these claims that have been filed

22  on their behalf before signing any release of their claims.

23        **THE COURT:**  All right.  So there won't be any

24  suggestions of along the lines just conceptually there won't be

25  any wording to the effect of, you know "Don't sign this because

**PROCEEDINGS**

1   you may get more in a settlement in court," or "you're giving

2   away valuable rights that may be worth money"?

3        Nothing like that?

4           **MS. LISS-RIORDAN:**  Well, you can see it, Your Honor.

5   It looks like the type of notice that a Court would authorize

6   when courts authorize notice.  And it simply says -- it says

7   language to the effect of "The Court has not ruled on the

8   merits of the claims."

9           **THE COURT:**  Okay.

10          **MS. LISS-RIORDAN:**  It's written in -- in a court -- in

11  the voice of a court-approved notice.

12          **THE COURT:**  Fine imitation of the district court?  I

13  get it.  Okay.

14          **MS. LISS-RIORDAN:**  Yes.

15          **THE COURT:**  What does Twitter -- what have you

16  proposed to say?  I'm not saying you agree; I understand that.

17  But if you had to, what would you propose to say?

18          **MR. MECKLEY:**  Right, Your Honor.  And, obviously, we

19  don't agree that any notice is appropriate.

20       The proposed notice that plaintiffs' counsel sent over,

21  I believe, was three, maybe four pages.  Very long.

22          **THE COURT:**  Is that -- is it really?

23       Is that right Ms. Liss-Riordan, is it more than one page?

24          **MS. LISS-RIORDAN:**  Well, it could be condensed.  It

25  has a caption.  It looks like, essentially, similar to what you

1   see when 216(b) FLSA notices issue.  This isn't, obviously, a

2   216(b) case.  But I believe it concisely describes the claims

3   and provides information about the claims.  I don't think it's

4   overly long.  I would be happy to negotiate with Twitter's

5   counsel that --

6          **THE COURT:**  All right.  I interrupted.  But go ahead,

7   yes.

8          **MR. MECKLEY:**  And, Your Honor, that's -- I mean,

9   granted, we're not at the stage of agreeing to anything.  But

10  this did look like the notice that goes out when a class is

11  certified, when a class is settled.  It seemed very

12  inappropriate in its length.  It seemed inappropriate in its

13  content.

14      I can tell you that any time that I've done this in a

15  different type of situation -- which it doesn't exist here --

16  it is the smallest reference:  Name of the case; claims that

17  are alleged based off the pleading, in a very rudimentary

18  fashion; no description of the merits of those claims; a

19  statement that the defendant denies the claims; and then that

20  the Court has made no ruling on it whatsoever and you can't

21  interpret from this anything regarding it.  And it's very, very

22  concise and to the point.

23         **THE COURT:**  Okay.  So that would be -- should the day

24  come when Twitter is required to do that, if it comes, that

25  would be the kind of notice, half a page, maybe something like

1  that?

2          **MR. MECKLEY:**  If that is what the Court orders --

3          **THE COURT:**  I mean, they're only two claims, so

4  there -- it can't be -- there are two claims in the case.

5  There's a federal WARN Act and a California WARN Act -- I guess

6  breach of contract.

7          **MS. LISS-RIORDAN:**  Promissory estoppel.

8          **THE COURT:**  You should be able to put those in

9  single-spaced lines.  It shouldn't be more than an inch, I

10  would imagine.  And, you know, as Mr. Meckley said, obviously

11  it would be something to the effect of, you know, the suit was

12  filed on X date; nothing has happened in court on the merits.

13  And, you know, I -- if we did something, I would imagine --

14  we're just talking among friends here -- okay? -- out loud.  I

15  haven't made a decision yet; we're going to get to that in

16  moment, but something along the line of "You may wish to

17  consult with somebody."  I mean, that's not an atypical thing

18  to say before you sign the release.

19      Let me just ask you, Mr. Meckley, I mean, why -- why not

20  just do it?  I mean, what is Twitter so reluctant to do?

21      What harm -- I mean, just what harm is there in just

22  telling people:  Hey, here is your package.  By the way, you

23  probably have heard in the news -- because it has gotten a lot

24  of publicity -- there's this lawsuit, and we just wanted you to

25  be aware of it.

1     I mean, that might make your waivers and severance

2   packages a little more enforceable.

3        MR. MECKLEY:  Well, Your Honor, I think there are a

4   number of very real and valid procedural reasons why that's not

5   appropriate given the posture of this case at this time, which

6   is that each one of these named plaintiffs has an arbitration

7   agreement.  And as you've read, I'm sure, our position is

8   there's really no standing, no procedural platform upon which

9   to invoke Rule 23 and give notice to people when the plaintiffs

10  themselves have no standing.  And, again, it presumes that

11  the Court would enforce the motion to compel, but shouldn't be

12  in this case.

13       So it really sort of --

14       THE COURT:  Let me just jump in.

15     That's the lawyer's reasons.  I'm just talking about

16  pragmatic, practical reasons.  Why wouldn't the company just

17  dot every T -- I mean dot every I and cross every T, and just

18  say:  Hey, by the way, I'm sure you've heard, but there's this

19  lawsuit.  We just want to make sure you know it's out there.

20       What's wrong with doing that?

21       MR. MECKLEY:  And I don't know that I would agree in

22  the characterization of that as, you know, the lawyer's

23  version.  I think that's what the company feels strongly about.

24  And, in part, it's because of its belief in its arbitration

25  program, and there's a reality to that.

**PROCEEDINGS**

1          **THE COURT:**  This has no impact on that.  There's no

2     judge in any court would ever hold this kind of notice against

3     you.  That has zero impact on the enforceability of an

4     arbitration agreement.  There's nothing to fear.

5          What is the fear?  There's nothing to fear.

6          **MR. MECKLEY:**  Well, Your Honor, I think one of the

7     issues that we're confronted with is the fact that the vast or

8     overwhelming -- pick an adjective -- majority of people who

9     were subject to this RIF action have arbitration agreements.

10    So in a sense, it is really misleading to those people to be

11    given a notice about some class action that they can't

12    participate in, and might lead them to either make decisions

13    regarding accepting the severance or not that are negatively -

14    for them --

15         **THE COURT:**  Let me jump in.  That's up to them.  I

16    mean, that's -- I hate -- hesitate to use the word

17    "paternalistic," but that's up to your -- look, we're talking

18    about Twitter.  These are -- these are Silicon Valley

19    employees, and that comes with, you know, all the baggage you

20    might think it comes with.  So I'm not -- this is not a

21    situation of, you know, undocumented workers in a

22    meat-processing plant who don't speak English and may have some

23    other transactional barriers to really understanding what's

24    happening.  This is a different set of people.

25         And I just don't see the harm in saying to Twitter

1  employees "You can sign now and get your severance.  You can do

2  whatever you want, but just be aware of the fact that this

3  lawsuit was filed."  That's all it would say.

4      It wouldn't say anything more than a lawsuit has been

5  filed.  It wouldn't say class action, because right now it's

6  not.  It's a putative class action.  No class has been

7  certified.

8      You know, I just -- I'm just not hearing -- and maybe

9  there -- maybe we've gone around the tree enough on this.  But

10 just as a practical matter, it's not impossible that someone

11 would sign a waiver and release of claims and then say later:

12 Well, I had no idea that this litigation was going on, and I

13 feel like I was misled into giving away these claims.

14     And then there's an issue now about the enforceability of

15 that, all of which would go away if you just told them up front

16 "There's a lawsuit," period.

17     I mean, that's literally what the notice would say:  There

18 is a lawsuit.

19     Period.

20     **MR. MECKLEY:**  Well, obviously, the devil is in the

21 details with regard to that, and what is specifically said.  So

22 I think that's a very big component of this.

23     **THE COURT:**  Well, what if it just said "There is a

24 lawsuit"?

25     We're not going to do a four-page document, that's for

1    sure.  I mean, even if -- and I really want to emphasize, I'm

2    not deciding anything.  We're just talking here.  I'd like to

3    explore where everybody is.  You know, it's going to be -- it's

4    going to be a one-pager at the most.

5         So could you live with that?  Could Twitter live with

6    that?  "There's a lawsuit.  Here is the name.  Here is the

7    case.  Here is the lawyer if you want to contact her."

8              **MR. MECKLEY:**  I don't think -- I think, Twitter has

9    opposed this request, and we stick by our opposition to this

10   request.  Obviously, the Court is, you know, here to adjudicate

11   this issue and make a ruling --

12             **THE COURT:**  Mr. Meckley, I know you've opposed it.

13   That's why we're here.  I'm asking you to talk to me.

14        Why?  Why is this so unpalatable?

15             **MR. MECKLEY:**  I believe it's for the reasons I just

16   explained.

17             **THE COURT:**  You just believe in arbitration so

18   strongly you can't even stomach the idea of telling people

19   there's a lawsuit.

20             **MR. MECKLEY:**  Well, I believe in sort of the

21   procedural posture, and the fact that having sort of a headless

22   case is not the platform by which to give people this type of

23   notice.

24             **THE COURT:**  The case has not been adjudicated as

25   headless.

**PROCEEDINGS**

1      **MR. MECKLEY:**  It's a sequencing issue, certainly.  But

2   I believe that, you know, the vast majority of the cases will

3   say that arbitration is a threshold issue when you get to these

4   type of questions, and that's really the appropriate initial

5   question to decide.

6      And, therefore, that's why we had asked to expedite the

7   hearing on our motion to compel.  I understand the Court didn't

8   want to do that, but still --

9      **THE COURT:**  We're not going to rush here.  We're going

10  to do this in due course.

11     Let me get back to the plaintiffs and Ms. Liss-Riordan.

12     So I have had 23(d) notice issues come up; they're very

13  rare.  One other case that I had was in a very different

14  circumstance where some affirmative misrepresentations were

15  being made about the litigation by someone who was involved in

16  the case that, were they to be believed, would have had

17  negative impacts on class members.

18     I just -- I don't -- I don't see that here.  I mean,

19  Twitter had this severance and release program -- at least in

20  the hopper, maybe not publicly announced, but at least in the

21  hopper before you filed the lawsuit.  It was announced

22  immediately after -- you know, coincidence or not, but it came

23  out immediately after.

24     I didn't see anything in the papers indicating that

25  Twitter did anything untoward; in other words, I didn't see any

**PROCEEDINGS**

1   indication or evidence that this severance and release program

2   was designed to thwart the litigation or undercut the putative

3   class or do anything else that's nefarious.

4      Do you?

5         **MS. LISS-RIORDAN:**  No.

6      So, Your Honor, I mean, it's not required that the

7   defendant's action be in response to an already filed lawsuit.

8   But the case law is such that once a lawsuit has been filed,

9   then the putative class have the right to the notice of its

10  existence.  So the case that's the most on point with the

11  facts, practically identical facts, is the *Lynch versus Tesla*

12  case.

13        **THE COURT:**  I have to say, I just did not find the

14  magistrate judge's decision to be that compelling.  I just

15  didn't.  And, as you know, procedurally, it didn't go anywhere;

16  the district court stayed it.  So I know that's your best shot

17  and I read it, but it's just -- I'm not really sold that --

18  look --

19        **MS. LISS-RIORDAN:**  Another case --

20        **THE COURT:**  In addition to Rule 23 -- yes, you can

21  finish in a minute -- you know, there are concerns about

22  restricting speech or compelling speech.  And you just don't do

23  that at the drop of a hat.

24      Go ahead.

25        **MS. LISS-RIORDAN:**  Sure.  The other case that we've

 1   also highlighted in our papers was in this courthouse by

 2   Judge Chen at the beginning of the *O'Connor versus Uber*

 3   litigation.  We had a similar situation where Uber was in the

 4   process of distributing new arbitration agreements.  And we

 5   filed a lawsuit while those arbitration agreements were being

 6   distributed.

 7        So the arbitration agreements were not a response to the

 8   filing of the complaint.  But we raised a very early Rule 23(d)

 9   motion, and Judge Chen granted it, and agreed that once the

10   case had been filed, there was a duty of the Court to consider

11   whether or not putative class members were being asked to sign

12   something or agree to something that might implicate their

13   rights in that case.  So he did enter Rule 23(d) relief.

14        **THE COURT:**  The problem I have with that is -- leaving

15   aside the reasoning -- which I'm not sure I necessarily

16   embrace -- it got reversed on appeal.

17        **MS. LISS-RIORDAN:**  No.  What was we reversed on appeal

18   was a decision that Judge Chen made years later -- years later,

19   holding that the arbitration agreement wasn't enforceable.

20   That's what got reversed.  Nothing in the Ninth Circuit

21   decision undermined his initial ruling that a Rule 23(d)

22   protective order was appropriate that -- that decision has not

23   begun undermined in any way.

24        **THE COURT:**  Can I read something for you from the

25   Ninth Circuit decision?

1           **MS. LISS-RIORDAN:**  Yes.

2           **THE COURT:**  (as read):

3              "Reversing these class certification orders also

4       leads us to set aside the Rule 23(d) orders."

5       They were set aside by the circuit.

6           **MS. LISS-RIORDAN:**  I'm sorry, Your Honor.  It's been a

7       while --

8           **THE COURT:**  I was just reading that from -- yeah.

9           **MS. LISS-RIORDAN:**  I mean, right --

10          **THE COURT:**  Just so we're clear, this is *O'Connor v.*

11      *Uber*, 904 F.3d 1087, and the pin cite is page 1095.

12      The 23(d) orders were definitely reversed on appeal.

13          **MS. LISS-RIORDAN:**  Okay.  I apologize for that.  I

14      did -- that slipped my mind that they did that.

15      If I can just say, though --

16          **THE COURT:**  Your name is on the caption.

17          **MS. LISS-RIORDAN:**  Yes, it was my case, I know.

18      We've put in a number of cases in which courts have

19      granted Rule 23(d) relief.  And I think the import behind it --

20      again, it's not a question about whether or not the employer

21      set out to do something to try to undermine pending litigation.

22      The issue was whether or not, if there's a case that is

23      establishing making a claim for certain rights, then putative

24      class members have the right to know about that.

25          And if you think about it, if the rule were otherwise, if

1   the rule were what Twitter is asking for, that would allow --

2   that would mean that you could only bring such a challenge if

3   the -- you know, depending on the timing -- in other words, we

4   would have had to file the case before Twitter even thought

5   about sending these out, which, obviously, if we did that, they

6   would have said we had jumped the gun.  They're already saying

7   we jumped the gun.

8       So it would just -- it would not serve the interests of

9   justice to set it up so that employers are allowed to very

10  quickly do something that violates the law, but then quickly,

11  and before anyone knows what's happening, get releases from the

12  affected employees so they can't do anything about it.

13          **THE COURT:**  Let me ask you this, though:  You would

14  agree that this has been -- your lawsuit has been very widely

15  publicized.  I mean, I've seen it everywhere; national

16  publications, local, Silicon Valley publications, online,

17  old-school print.  I mean, it's been everywhere.

18      Do you really think anybody at Twitter doesn't know about

19  it?

20          **MS. LISS-RIORDAN:**  Well, actually, Your Honor, we're

21  fielding inquiries every day from Twitter employees.  And

22  despite what you would think from what you see from all the

23  press, people are really confused; don't understand that there

24  have been claims already filed; don't understand what they say.

25      Just because there are third-party reports out there about

**PROCEEDINGS**

1  it, that's not getting the specific information to these

2  putative class members that would be required under this case

3  law that a Rule 23(d) protective order would provide.

4       And, again, I agree with Your Honor.  It could be very

5  short.  Doesn't need to be -- just the way we did the spacing

6  is why it came out to several pages.  But we could very

7  concisely have the employees be aware this case has been

8  filed -- just what you said.  Just state what the claims are;

9  state they can contact the lawyer if they've got any questions.

10  They should just be aware of this.

11       **THE COURT:**  Okay.  I want to also talk about amendment

12  of the complaint, but any closing comments on the notice issue?

13       **MR. MECKLEY:**  Yes, Your Honor.

14       One other consideration to think about -- and this is

15  direct from language of Rule 23(d).  It allows the Court -- it

16  says the Court may issue orders requiring -- giving appropriate

17  notice to "some or all class members."

18       And I would just make this point to the extent the Court

19  is considering requiring any form of notice, that language

20  "some or all" bears importance here because, again, my point

21  about the arbitration agreements, the Court might issue an

22  order saying that notice is required in severance agreements to

23  people who opted out of the arbitration agreement, not to those

24  people who are bound by the arbitration agreement.  So just

25  realizing it doesn't have to be a broad, you know,

**PROCEEDINGS**

 1   one-size-fits-all approach.

 2           **THE COURT:**  Okay.

 3           **MS. LISS-RIORDAN:**  And, Your Honor if I could just

 4   respond very briefly.

 5       We did cite a number of cases in our papers regarding FLSA

 6   216(b) notice.  Obviously, Twitter focuses on the *Hughes* case,

 7   which is an outlier in which Judge Beeler did not allow such

 8   notice because of the arbitration agreements.  But there's a

 9   wealth of authority in which 216(b) notice has been

10   disseminated even when class members or putative class members

11   had arbitration agreements.

12       And I would say that the request here is -- has stronger

13   basis than a request for 216(b) notice that would allow

14   employees to affirmatively join a case.  We're not even asking

15   for that because, obviously, this isn't an opt-in case.  We're

16   simply asking for employees not to unknowingly waive their

17   rights without realizing that these specific claims have been

18   filed on their behalf.

19       So those cases that have allowed 216(b) notice, even to

20   putative class members who signed arbitration agreements, our

21   case should be on better footing than that.

22       And also I'll point out, of course, we have opposed

23   Twitter's motion to compel arbitration.  The Court will hear

24   that in January.

25       There is case law saying that the Court has the right -- a

**PROCEEDINGS**

1  wealth of case law we've cited that the Court has a right to

2  make preliminary rulings prior to considering arbitration.

3      In this case, we have opposed, in good faith, this

4  arbitration agreement.  We don't know what the Court is going

5  to do about that.  And also, as I expect we're about to

6  discuss, we have moved to amend the complaint to add several

7  plaintiffs who opted out of arbitration.

8      **THE COURT:**  Let me ask you about that.

9      Do you have any sense of how many -- roughly, not tying

10  your hands in any way -- how many Twitter employees opted out?

11      **MS. LISS-RIORDAN:**  I don't know exactly.  But I have

12  heard from a number of them, so there are a number.  I think

13  it's a very small percentage overall -- I couldn't hazard a

14  guess as to how many -- but it's going to be a very, very small

15  number, relatively speaking.  But there are -- there are some

16  who did.

17      **THE COURT:**  All you're proposing to do is just amend

18  with new plaintiffs; right?

19      **MS. LISS-RIORDAN:**  Correct.

20      **THE COURT:**  Okay.  What's wrong with that,

21  Mr. Meckley?

22      **MR. MECKLEY:**  Oh.  As we said in the opposition we

23  filed last night, Your Honor, much is wrong with that.

24      In terms of the --

25      **THE COURT:**  Okay.  But I know you think people did

1    this and they did that.  I'm not resolving fact disputes.  This

2    is a request to amend.  Liberally granted.  You have to have a

3    good procedural reason -- it's barred by the limitations

4    period -- there's just no dispute about it.  I don't know.

5    Look, I know you told me "Oh, they did this, they did that."  I

6    can't decide that.  It's way beyond the scope of a motion to

7    amend.

8        So what is it about adding some non- -- this happens with

9    some regularity when people are faced with arbitration

10   agreements and they're not sure what's going to happen, they

11   add some people who are not in the zone.

12       What's wrong with that?

13       **MR. MECKLEY:**  Right.  Because, as we cited, there are

14   cases that say it's inappropriate to basically allow amendment

15   to breathe life into a nonexistent action where the named

16   plaintiffs don't have standing, which is the case exactly at

17   issue here.

18       Also, this is not seeking just to add a new claim, it's to

19   add a new party.  And the standard becomes a little bit less

20   liberal.  Also this complaint has already been amended once.

21   The standard becomes a little bit less liberal under that

22   circumstance as well.

23       **THE COURT:**  Oh, well, welcome to the Ninth Circuit.

24   If you're not a regular practitioner here, you often get a

25   unbelievable number of opportunities to amend.

**PROCEEDINGS**

1        Okay.  The motion to amend is granted.

2        When do you -- did you already file one and it is just a

3   matter of putting it on the docket?

4            **MS. LISS-RIORDAN:**  Your Honor, it is attached to the

5   motion.

6            **THE COURT:**  Just file that within the next day or so

7   as a, you know, freestanding ECF docket entry.

8            **MS. LISS-RIORDAN:**  Thank you.

9            **THE COURT:**  Okay.  And, Mr. Meckley, I want you to

10  just, you know, continue to stay on hold.  I'll have an order

11  out on the notice early next week, but just don't do anything

12  before that.  Okay?

13           **MR. MECKLEY:**  Correct.

14           **THE COURT:**  All right.

15       Okay.  Anything else for today, Plaintiffs?

16           **MS. LISS-RIORDAN:**  Not from plaintiffs, thank you.

17           **THE COURT:**  Defendants?

18           **MR. MECKLEY:**  Not from the defendant, Your Honor.

19           **THE COURT:**  Thanks so much for coming in.  I

20  appreciate it.

21           **MR. MECKLEY:**  Thank you.

22           **THE CLERK:**  All rise.  Court is in recess.

23                (Proceedings adjourned at 2:01 p.m.)

24                        ---o0o---

25

1

2                    **CERTIFICATE OF REPORTER**

3          I certify that the foregoing is a correct transcript

4    from the record of proceedings in the above-entitled matter.

5

6    DATE:    Friday, January 20, 2023

7

8

9

10   _____

11      Ruth Levine Ekhaus, RMR, RDR, FCRR, CSR No. 12219
               Official Reporter, U.S. District Court

12

13

14

15

16

17

18

19

20

21

22

23

24

25