SHANNON LISS-RIORDAN (SBN 310719)
(sliss@llrlaw.com)
THOMAS FOWLER (*pro hac vice* forthcoming)
(tfowler@llrlaw.com)

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone:  (617) 994-5800
Facsimile:  (617) 994-5801

*Attorneys for Plaintiffs Emmanuel Cornet, Justine De Caires, Grae Kindel, Alexis Camacho, Jessica Pan, Emily Kim, Miguel Barreto, and Brett Menzies Folkins, on behalf of themselves and all others similarly situated*

ERIC MECKLEY (SBN 168181)
(eric.meckley@morganlewis.com)
BRIAN D. BERRY (SBN 229893)
(brian.berry@morganlewis.com)
ASHLEE N. CHERRY (SBN 312731)
(ashlee.cherry@morganlewis.com)

MORGAN, LEWIS, & BOCKIUS, LLP
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone:  (415) 442-1000
Fax:  (415) 442-1001

*Attorneys for Defendant Twitter, Inc.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| EMMANUEL CORNET, JUSTINE DE CAIRES, GRAE KINDEL, ALEXIS CAMACHO, JESSICA PAN, EMILY KIM, MIGUEL BARRETO, and BRETT MENZIES FOLKINS, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TWITTER, INC.<br><br>Defendant. | Case No. 3:22-cv-06857-JD<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>BEFORE THE HON. JAMES DONATO<br><br>Date:  February 9, 2023<br><br>Time:  10:00 AM[1]<br><br>Place:  Courtroom 11 |

---

[1]   Please see Plaintiffs' request below regarding whether this conference could be held at 9:00 a.m., in order to accommodate counsel's schedule to be heard in another case in the same courthouse at 10:00 a.m.

Plaintiffs Emmanuel Cornet, Justine De Caires, Grae Kindel, Alexis Camacho, Jessica Pan, Emily Kim, Miguel Barreto, and Brett Menzies Folkins ("Plaintiffs") and Defendant Twitter, Inc. ("Defendant" or "Twitter"), by and through their respective counsel of record, hereby submit the following Joint Case Management Statement pursuant to Local Rule 16-9 and the Court's Order at Dkt. 12, in advance of the Case Management Conference scheduled in this matter for February 9, 2023.

I. **JURISDICTION AND SERVICE**

The Parties do not intend to raise any issues regarding personal or subject matter jurisdiction at this time. With respect to venue, Twitter has moved to transfer this matter to the United States District Court for the District of Delaware (Dkt. 45). Plaintiffs have opposed Twitter's motion (Dkt. 56). The Court is currently scheduled to hear Twitter's motion to transfer venue on February 23, 2023 (which Plaintiffs have requested the Court hear at the upcoming CMC, if oral argument is needed; Defendant has requested that the hearing date remain on calendar and this CMC be continued).

II. **FACTS**

A. **Plaintiffs' Factual Statement**

As Plaintiffs have alleged, Elon Musk recently purchased Twitter and immediately began laying off more than half of its workforce. In April 2022, after it was announced that Elon Musk would be purchasing Twitter, Twitter employees raised concerns regarding the company's policies following the acquisition and how they would be impacted by possible layoffs. In order to allay employees' concerns, and in an effort to prevent employees from leaving Twitter to work at other companies, Twitter made various promises to employees, including that: (1) if there were layoffs within a year of the acquisition, employees would receive benefits and severance at least as favorable as the benefits and severance that Twitter previously provided; and (2) employees would be able to continue working remotely for at least a year after Musk's acquisition. Twitter communicated these promises orally (including at periodic "all-hands" meetings) and in writing by Twitter's management.

Twitter made these promises in consideration for the employees' continued willingness to work for Twitter, and many employees, including the named Plaintiffs, relied on these promises and maintained their employment at Twitter, rather than seeking job opportunities elsewhere. Plaintiffs allege that after Musk completed his acquisition of Twitter in late October 2022, he quickly reneged on these promises. First, Twitter initiated a mass layoff and announced that the laid off employees would receive less favorable benefits and severance than Twitter had previously provided. Second, Musk announced that he was ending Twitter's remote work policy that employees who were not laid off would need to begin working at company offices, with few exceptions. Plaintiffs allege that, in making these promises to its employees in consideration of their continuing to work for Twitter, Twitter entered a contract with its employees, which it then breached when it reneged on the promises.

Plaintiffs also allege that Twitter is liable to its employees under the doctrine of promissory estoppel, since they relied on Twitter's promises to their detriment.

Separately, Plaintiffs allege that they are third-party beneficiaries of the merger agreement through which Elon Musk purchased Twitter. The merger agreement stated that for at least a year after the acquisition became effective, Twitter would "provide severance payments and benefits to each Continuing Employee whose employment is terminated during such period that are no less favorable than those applicable to the Continuing Employee" prior to the acquisition. Plaintiffs allege that Twitter breached this provision of the merger agreement and is liable to its employees as third-party beneficiaries.

Plaintiffs have also alleged that Twitter did not provide 60 days advance written notice to all employees who were laid off, in violation of the federal Worker Adjustment and Retraining Notification Act (the "WARN Act") and, for employees who worked out of California, the California WARN Act, Cal. Lab. Code § 1400 *et seq.* (the "California WARN Act."). Plaintiffs also alleged that Twitter did not provide all terminated employees with their full final pay, accrued benefits, and expense reimbursement immediately upon termination, as required by Cal. Lab. Code §§ 201, 203, and 227.3.

Finally, Plaintiffs brought a claim under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, seeking a declaratory judgment and an injunction prohibiting Twitter from soliciting employees to sign separation agreements that release their claims asserted by Plaintiffs without first informing them of their rights under the law and of the pendency of this case. This claim was effectively adjudicated through the Court's granting of Plaintiffs' Emergency Motion for a Protective Order on December 14, 2022 (Dkt. 42).

**B.  Defendant's Factual Statement**

Based in San Francisco, California, Twitter is a leading social media platform, connecting millions of people in the digital town square.  Twitter's primary business is to innovate, develop, and maintain an existing social media platform providing its users with the ability to "tweet" short, electronic microblogs on almost any subject.  A core strength of this platform is the ability to instantly share these messages with a worldwide audience.  Twitter's workforce consists of a wide-variety of job descriptions, including technical engineers, software developers, and product specialists.  Twitter's employees work together to innovate, develop, and maintain its single product; the social media platform for which Twitter is well-known.

On April 25, 2022, X Holdings I, Inc. and X Holdings II, Inc. entered into an Agreement and Plan of Merger with Twitter ("Merger Agreement").  The merger closed on October 27, 2022.  Following the merger close, Twitter identified areas needing improvement if Twitter was to reach its full potential and become profitable.  To improve the financial health of the Company, Twitter made the difficult decision to downsize its workforce and realign its operations.  Twitter sought to identify where it had a competitive advantage and where it could stand to improve, including through a reorganization.

Twitter provided timely and compliant written WARN Act notice to employees impacted by the reduction in force.  Employees continued to remain employed and receive their pay and company benefits through their separation dates, which were at least 60 days following their notice of layoff (except for New York-office based employees who received at least 90 days' notice with pay and benefits through separation).  Twitter also provided timely and compliant

written WARN Act notices to the governmental/administrative agencies in the jurisdictions in which employees were impacted by the reduction in force.

In early January 2023, Twitter offered employees the opportunity to receive severance pay in exchange for signing a release agreement. Giving employees the opportunity to receive severance was generous based on Twitter's financial circumstances and was entirely discretionary on Twitter's part, because Twitter had no obligation to provide any severance opportunity or other such terms, benefits or payments to employees. For example, and responsive to Plaintiffs' allegations, the Merger Agreement, Article VI, clause 6.9(c), stated that nothing in the provision "expressed or implied, shall (i) be treated as the establishment, amendment or modification of any Company Benefit Plan, Post-Closing Plan or other employee benefit plan or constitute a limitation on rights to amend, modify, merge or terminate after the Effective Time any Company Benefit Plan, Post-Closing Plan or other employee benefit plan, (ii) give any Company Service Provider (including any beneficiary or dependent thereof) or other Person any third-party beneficiary or other rights or (iii) obligate Parent or any of its Affiliates to (A) maintain any particular Company Benefit Plan, Post-Closing Plan or (B) retain the employment or services of any Company Service Provider." The Merger Agreement, clause 9.7, also stated that it "is not intended to and shall not confer upon any Person other than the parties hereto any rights or remedies hereunder."  As a result, Twitter employees do not have any right to seek to enforce the Merger Agreement.

### III. LEGAL ISSUES

The Parties agree that the primary legal issues presented by Plaintiffs' lawsuit are: (1) whether Twitter is liable to Plaintiffs and the putative class for breach of contract based on Plaintiffs' allegations that Twitter did not provide benefits and severance in accord with alleged written and oral promises; (2) whether Twitter is liable to Plaintiffs and the putative class under the doctrine of promissory estoppel; (3) whether Twitter is liable to Plaintiffs and putative class members (as third-party beneficiaries) based on Plaintiffs' allegations that Twitter breached the Merger Agreement; (4) whether Twitter violated the federal WARN Act, and for employees in

California, the California WARN Act, with respect to all employees who were laid off;

(5) whether Twitter violated California Labor Code §§ 201, 203, and 227.3 with respect to California employees whose employment terminated; and (6) whether Plaintiffs' various claims may be certified as a class action under FRCP 23.

## IV.     MOTIONS

The motions filed in this case include:

    1)    Plaintiffs' Emergency Motion for a Protective Order (Dkt. 7), filed on November 9, 2022. The Court granted this motion on December 14, 2022 (Dkt. 42).

    2)    Plaintiffs' Emergency Motion to Shorten Time for Defendant's Response (Dkt. 11), filed on November 10, 2022. The Court granted this Motion on November 14, 2022 (Dkt. 13).

    3)    Twitter's Motion to Compel Arbitration and Strike and/or Dismiss Class Claims (Dkt. 18), filed on November 21, 2022. On January 13, 2023, the Court compelled arbitration for the claims of Plaintiffs Cornet, De Caires, Kindel, Camacho, and Pan but did not dismiss the class claims, stating "The effect of this order on the putative class in the second amended complaint will be taken up later as warranted by developments in the case." (Dkt. 52).

    4)    Twitter's Administrative Motion to Shorten Time on Defendant's Motion to Compel Arbitration and Strike Class Claims (Dkt. 19), filed on November 21, 2022. The Court denied this motion on November 23, 2022 (Dkt. 27).

    5)    Plaintiffs' Motion for Leave to File Second Amended Complaint (Dkt. 28), filed on November 23, 2022. The Court granted this motion on the record during the hearing of December 8, 2022 (Dkt. 39).

    6)    Twitter's Objection and Request to Strike Plaintiffs' Reply Brief (Dkt. 31), filed on November 23, 2022. The Court denied this motion on November 28, 2022 (Dkt. 33).

    7)    Plaintiffs' Administrative Motion for the Court to Hear Plaintiffs' Motion for Leave to File Second Amended Complaint Together with their Emergency Motion for Protective Order (Dkt. 34), filed on November 30, 2022. The Court did not formally rule on this motion but

considered the two motions in question together during the hearing of December 9, 2022 (Dkt. 39).

8) Twitter's Motion to Transfer Venue and/or Motion to Dismiss (Dkt. 45), filed on December 23, 2022. These motions remain pending. Plaintiffs filed their Opposition on January 20, 2023 (Dkt. 56). Twitter's Reply is due on February 3, 2023 (Dkt. 48). The hearing is currently scheduled to take place on February 23, 2023. As is explained more fully in Section XVI *infra*, Plaintiffs request that (if the Court desires oral argument) this motion be heard as part of the Case Management Conference on February 9, 2023, as Plaintiffs' counsel Shannon Liss-Riordan will need to travel to San Francisco from Boston, Massachusetts, and she will already be in San Francisco on February 9 for hearings in other matters.

Twitter contends the more appropriate and efficient approach is for the Court to continue the Case Management Conference to a date at least fourteen (14) days following the hearing on Twitter's Motion to Transfer Venue and/or Motion to Dismiss in order to (1) allow the Court sufficient time to review the full briefing on these motions prior to a hearing, and (2) allow the Parties sufficient time following a ruling on the motions to meet and confer and address any issues that remain before the Court.

## V. AMENDMENT OF PLEADINGS

Plaintiffs intend to seek amendment to add an additional lead plaintiff who opted out of arbitration in order to advance the claims under the California WARN Act and the California Labor Code.  Plaintiffs also intend to seek amendment to add PAGA claims related to California WARN Act and Labor Code violations.

Twitter intends to oppose such proposed amendments. Twitter also requests that the Court set a deadline of April 7, 2023 (approximately 60 days from the initial status conference) for the Parties to amend their pleadings.

/ / /

/ / /

/ / /

## VI. EVIDENCE PRESERVATION

The Parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines") and have complied with their evidence preservation obligations.

## VII. DISCLOSURES

The Parties have yet to exchange their initial disclosures. Pursuant to Fed. R. Civ. P. 26(a)(1)(C), the Parties have agreed to exchange initial disclosures within fourteen (14) days of the Court's ruling on Twitter's pending Motion to Transfer Venue and/or Motion to Dismiss (Dkt. 45).

## VIII. DISCOVERY

The Parties agree to begin discovery following the Court's ruling on Twitter's pending Motion to Transfer Venue and/or Motion to Dismiss (Dkt. 45), if such motion is denied. The Parties intend to conduct written discovery and depositions.

Plaintiffs propose that the discovery period shall continue until 60 days after the close of the class action opt-out period, should the Court certify this case as a class action. If the Court declines to certify this case as a class action, the discovery period shall close 60 days after the Court's denial of Plaintiffs' request for class certification.

Twitter believes the discovery cut-off date(s) should be set in accordance with the overall case management schedule proposed by Twitter in Section XVI, *infra*.

## IX. CLASS ACTION

Plaintiffs intend to move for class certification, following some initial discovery. Plaintiffs are aware that numerous employees opted out of Twitter's arbitration agreement or began working for Twitter before it implemented its arbitration clause and thus do not believe that the existence of an arbitration agreement will defeat numerosity for a class action in this case. Plaintiffs may move for class certification within 90 days of the beginning of discovery.

As required by Civil L.R. 16-9(a), Plaintiffs state that a class is maintainable under Fed. R. Civ. P. 23(a) and 23(b)(3). They will seek to certify classes consisting of all Twitter

employees who have lost their jobs since November 2022, who are not bound by arbitration agreements, and who (1) did not receive WARN Act notice (or 60 days pay and benefits in lieu of notice); (2) did not receive the benefits and severance that had been promised prior to Twitter's acquisition by Elon Musk; and (3) worked in California and did not receive their full final pay, accrued benefits, and expense reimbursement immediately upon termination.

The pertinent facts are set forth in the current complaint. Plaintiffs expect to develop and support these facts through discovery. Briefly, Plaintiffs state that they expect to satisfy Rule 23(a), based on numerosity (there are many employees who have lost their jobs with Twitter since Elon Musk acquired the company and either opted out of arbitration or began working for the company before it implemented an arbitration clause); commonality (the claims of these employees will raise numerous common questions of fact and law); typicality (the named plaintiffs will have claims typical of the class); and adequacy (the named plaintiffs and their counsel will fairly and adequately represent the class).

Plaintiffs expect to satisfy the requirements under Rule 23(b) based on similar facts, since it will clearly be superior to maintain a class action, for efficiency purposes, rather than require each of these class members to bring their own individual action (as Twitter is requiring for those employees who signed arbitration agreements), and the common questions of law and fact will predominate over any individual questions.

Defendant intends to oppose class certification.

## X.   RELATED CASES

In its Related Case Order of January 24, 2023 (Dkt. 57), the Court found that this matter is related to <u>Rodriguez v. Twitter, Inc.</u>, 22-cv-07222-TLT (N.D. Cal.). The <u>Rodriguez</u> matter alleges WARN Act claims and California Labor Code claims against defendants Twitter and Pro Unlimited dba Magnit on behalf of persons who Rodriguez alleges were jointly employed by Twitter and Pro Unlimited. Defendants in <u>Rodriguez</u> have filed a motion to compel arbitration that the Court has yet to schedule for hearing. <u>Rodriguez</u> has now been reassigned to this Court.

/ / /

## XI. RELIEF

As set forth in the Second Amended Complaint (Dkt. 40), Plaintiffs seek damages incurred as the result of Twitter's breach of contract with its employees; damages incurred as the result of Twitter's breach of the merger agreement through which Elon Musk acquired Twitter to which Plaintiffs and similarly situated employees were third-party beneficiaries; damages under the doctrine of promissory estoppel; damages for Twitter's violations of the federal WARN Act and (for the employees who worked out of California) the California WARN Act; damages and penalties incurred through Twitter's failure to pay all wages and benefits immediately upon termination, in violation of the California Labor Code §§ 201, 203, and 227.3; a declaration and an injunction pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201, prohibiting Twitter from soliciting employees to sign separation agreements that release their claims asserted by Plaintiffs without first informing them of their rights under the law and of the pendency of this case (this claim was effectively adjudicated through the Court's granting of Plaintiffs' Emergency Motion for a Protective Order on December 14, 2022 (Dkt. 42)); attorneys' fees and costs; any and all other relief to which Plaintiffs and the putative class may be entitled.

Defendant denies Plaintiffs are entitled to any relief, either on an individual or class basis.

## XII. SETTLEMENT AND ADR

The Parties have not engaged in mediation or settlement discussions.

## XIII. OTHER REFERENCES

No other references are requested or appropriate at this time.

## XIV. NARROWING OF ISSUES

The Parties do not believe any issues can be narrowed by agreement at this time.

## XV. EXPEDITED TRIAL PROCEDURE

The Parties do not believe that this case can be handled under the Expedited Trial Procedure of General Order No. 64 Attachment A.

/ / /

/ / /

## XVI. SCHEDULING

The Parties stipulated to a briefing schedule on the pending Motion to Transfer Venue and/or Motion to Dismiss, which the Court ordered (Dkt. 48). Currently, the hearing on this motion is set for February 23, 2023.

If the Court wants to hear oral argument on the motion, Plaintiffs request that the Court hear argument at the Case Management Conference scheduled to be held on February 9, 2023. Plaintiffs' counsel will be traveling from Boston, Massachusetts, for the Case Management Conference and has other hearings in San Francisco on February 9. If the Court is amenable, hearing Twitter's motion at the Case Management Conference would prevent Plaintiffs' counsel from having to travel to San Francisco again two weeks later.  In addition, Plaintiffs respectfully request that the Court hold the Case Management Conference at 9:00 a.m. Pacific time if possible, as Plaintiffs' counsel currently have other hearings at the San Francisco federal court that day at 8:00 a.m. (before Judge Alsup) and 10:00 a.m. (before Judge Corley).

Twitter contends the more appropriate and efficient approach is for the Court to continue the Case Management Conference to a date at least fourteen (14) days following the hearing on Twitter's Motion to Transfer Venue and/or Motion to Dismiss in order to (1) allow the Court sufficient time to review the full briefing on these motions prior to a hearing, and (2) allow the Parties sufficient time following a ruling on the motions to meet and confer and address any issues that remain before the Court.

As described above, Plaintiffs propose that discovery begin immediately following the Court's ruling on Twitter's pending motion to dismiss or transfer and continue until 60 days after either the close of the opt-out period (should the Court certify this case as a class action) or the Court's denial of class certification.  Plaintiffs would move for class certification within 90 days of the opening of discovery.

/ / /

/ / /

/ / /

**Defendant's Proposed Schedule for Case Management:**

| | |
|---|---|
| Completion of Class Certification Fact Discovery | September 2023 |
| Deadline to file Motion for Class Certification ("MCC") | September 8, 2023 |
| Deadline to file Opposition to MCC | October 6, 2023 |
| Deadline to file Reply in support of MCC | October 20, 2023 |
| Hearing date for MCC | November 9, 2023 |
| Fact-based discovery cut-off (non-expert) | January 2024 |
| Affirmative expert disclosures (merits) | February 2024 |
| Rebuttal expert disclosures (merits) | March 2024 |
| Discovery cut-off (including merits-expert discovery) | April 2024 |
| Final motion cut-off | May 2024 |
| Pretrial conference | June 2024 |
| Trial | July 2024 |

## XVII. TRIAL

Plaintiffs request that a trial be set in this matter for early 2024.

Given the pendency of the motion to transfer venue and motion to dismiss, Defendant believes it is premature to schedule a trial in this matter. To the extent the Court intends to set a trial date, however, Defendant requests that a trial be set in July 2024, which is consistent with the Court's Standing Order that trials be scheduled within 18 months of the Case Management Conference.

## XVIII. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

### A. Plaintiff's Statement

Plaintiffs will file their Certification of Interested Entities shortly. Other than the named parties, there is no such interest to report.

### B. Defendant's Statement

Defendant will file its Certification of Interested Entities prior to the conference with the Court.

/ / /

### XIX. PROFESSIONAL CONDUCT

The Parties submit that their attorneys of record have reviewed the Guidelines for Professional Conduct for the Northern District of California.

### XX. MISCELLANEOUS

#### A. **Plaintiffs' Position**

On January 13, 2023, the Court entered an order granting Twitter's motion to compel arbitration (Dkt. 52) with respect to the original named plaintiffs in this case. Those plaintiffs have commenced arbitration proceedings, along with more than 1,000 other former Twitter employees represented by Plaintiffs' counsel. In arbitration, Twitter has taken the position that the employees must produce a copy of their signed arbitration agreement in order to proceed with arbitration, and JAMS (the arbitration provider specified on most of the arbitration agreements) has so far required the signed agreements in order to commence the arbitration process. Plaintiffs' counsel are in the process now of obtaining signed arbitration agreements from those clients who have them, but many of the employees do not have their agreements. Unless Twitter agrees to produce those agreements in order to begin the arbitration process (for those employees who do not have their agreement), Plaintiffs' counsel will need to file claims for these hundreds of employees in court. Plaintiffs expect that Twitter would then move to compel arbitration (as it did for the initial five plaintiffs in this case), which would require Twitter to produce these employees' arbitration agreements. Plaintiffs would like to discuss this matter at the CMC and whether it will be necessary for them to file claims for these hundreds of employees in this case, in order to force Twitter to produce their arbitration agreements (assuming that Twitter wants to force them to arbitrate their claims, rather than be putative class members in this case).

In response to Defendant's statement below, Plaintiffs state that they have filed cases in arbitration based upon their understanding that Twitter wants to enforce its arbitration agreement to require claims proceed individually, since that is what Twitter requested that this Court order with respect to the original named plaintiffs. (Twitter's curious remark below that these cases

have only been filed in arbitration in order to require Twitter to pay large filing fees makes little sense; Twitter has required these claims to proceed in individual arbitration, and so that is how counsel are proceeding with them.) In other cases Plaintiffs' counsel have litigated, the defendant employer has typically provided the individual signed arbitration agreements in order to allow those cases to proceed or has allowed the use of a template agreement. Now that Twitter has made clear that it does not want to participate in helping these arbitrations move forward, Plaintiffs' counsel have collected arbitration agreements from their clients. They now have several hundred of them, which will be submitted to Twitter and JAMS beginning tomorrow (for those whose agreements specify JAMS – for the others, Plaintiffs will provide them only to Twitter). However, with respect to the hundreds of employees who counsel represent and who do not have their signed agreement, they clearly will need to be permitted to pursue their claims somewhere; if they cannot proceed in arbitration, then they will before this Court.

Plaintiffs raise this issue for the Court simply to alert it to the fact that hundreds of plaintiffs may be added to this case (clearly only for Twitter then to move to compel their claims to arbitration), if this issue is not otherwise resolved.

### B. Defendant's Position

None of the demands for arbitration submitted to JAMS by Plaintiffs' Counsel included an arbitration agreement signed by the individual claimant. Rather, each demand attached an identical unsigned and undated template form of an arbitration agreement. These submissions by Plaintiffs were incomplete and insufficient to confer JAMS with any authority or jurisdiction to initiate arbitrations on behalf of these claimants for multiple reasons.

First, the failure to provide an arbitration agreement signed by any claimant failed to comply with JAMS Rules. Specifically, JAMS Employment Arbitration Rules and Procedures, Rule 5(a) states:

> "The Arbitration is deemed commenced when JAMS issues a Commencement Letter based upon the existence of one of the following: (i) A post-dispute

Arbitration Agreement fully executed by all Parties specifying JAMS administration or use of any JAMS Rules; or (ii) A pre-dispute written contractual provision requiring the Parties to arbitrate the dispute or claim and specifying JAMS administration or use of any JAMS Rules or that the Parties agree shall be administered by JAMS; or (iii) A written confirmation of an oral agreement of all Parties to participate in an Arbitration administered by JAMS or conducted pursuant to any JAMS Rules; or (iv) The Respondent's failure to timely object to JAMS administration, where the Parties' Arbitration Agreement does not specify JAMS administration or JAMS Rules; or (v) A copy of a court order compelling Arbitration at JAMS."

None of these five triggering factors existed here. In pertinent part, the JAMS rules require that a "pre-dispute written contractual provision" be submitted. The arbitration agreement attached to the demands for arbitration was an unsigned and undated template form, which failed to constitute a "contract" between any of these specific claimants and Twitter. JAMS Rule 5(a) requires that the arbitration agreement contain a provision "specifying JAMS administration or use of any JAMS Rules or that the Parties agree shall be administered by JAMS[.]" Without submission of the actual arbitration agreement signed and dated by each specific claimant, JAMS has no legitimate basis to find that any specific claimant and Twitter have agreed that JAMS should administer their specific arbitration. Without an actual signed and dated copy of an arbitration agreement between a specific claimant and Twitter agreement, no legitimate basis exists for JAMS to conclude that any of the more than 1,000 demands submitted is legitimately before JAMS. Because JAMS Rule 5(a) allows an arbitration to commence only if and when one of the specified triggering elements is satisfied – and none has been satisfied with Plaintiffs' counsel's submissions – JAMS was not authorized to proceed with commencing arbitration, and Twitter is not be required to pay any non-refundable fees for any demands that are not appropriately before JAMS.

Second, Twitter has a form of arbitration agreement that numerous employees have signed that does not specify JAMS as the arbitration provider and instead provides a different process for selection and appointment of an arbitrator. This arbitration agreement states:

"The Arbitrator shall be selected by mutual agreement of the Company and the employee. Unless the Employee and Company mutually agree otherwise, the

Arbitrator shall be an attorney licensed to practice in the location where the arbitration will be conducted or a retired federal or state judicial officer who presided in the jurisdiction where the arbitration will be conducted. If for any reason the parties cannot agree to an Arbitrator, either party may apply to a court of competent jurisdiction with authority over the location where the arbitration will be conducted for appointment of a neutral Arbitrator. The court shall then appoint an arbitrator, who shall act under this Agreement with the same force and effect as if the parties had selected the arbitrator by mutual agreement. The location of the arbitration proceeding shall be no more than 45 miles from the place where the Employee reported to work for the Company, unless each party to the arbitration agrees in writing otherwise."

This arbitration agreement does not specify (or even mention) JAMS or JAMS Rules and thus makes obvious that the arbitrator and/or arbitration provider may be one of the numerous potential arbitration providers that operate within the United States and need not be exclusively limited to JAMS.

It appears obvious that Plaintiffs' counsel rushed to submit more than 1,000 incomplete and insufficient demands for arbitration for the sole purpose of leveraging large initial case management fees against Twitter. However, because the demands submitted do not confer JAMS with the authority or jurisdiction to administer and/or commence arbitrations against Twitter, JAMS should not play into Plaintiffs' game of attempting to leverage large arbitration fees against Twitter.

Not surprisingly, JAMS General Counsel agreed with all of Twitter's points and required Plaintiffs' counsel to provide signed arbitration agreements specifying JAMS' jurisdiction.

To the extent Plaintiffs' counsel actually represents each of the 1,000+ individuals, then presumably her clients can provide her with their signed arbitration agreements, and they can proceed pursuant to the agreed upon process in their agreements, which may include attempting to select an arbitrator (not limited to JAMS) by mutual agreement on an employee-by-employee basis. Twitter is highly doubtful that (as Plaintiff contends) "hundreds of plaintiffs may be added to this case", to the extent Plaintiffs' counsel can demonstrate that she possesses signed arbitration agreements on behalf of each of the persons she claims to represent. Quite simply, there is a process to be followed, and the Court should not entertain Plaintiffs' attempts to

shortcut and/or ignore the process. As a result, at the present time, there is no issue before the Court to be resolved, and thus Defendant contends it is inappropriate to raise or address this issue in this statement or at the status conference. Twitter is including its position statement solely in response to Plaintiffs' insistence on inclusion of this issue in the joint statement.

Respectfully submitted,

EMMANUEL CORNET, JUSTINE DE CAIRES, GRAE KINDEL, ALEXIS CAMACHO, JESSICA PAN, EMILY KIM, MIGUEL BARRETO, and BRETT MENZIES FOLKINS, on behalf of themselves and all others similarly situated,

By their attorneys,

Dated: February 2, 2023      /s/ Shannon Liss-Riordan
Shannon Liss-Riordan, SBN 310719
Thomas Fowler (*pro hac vice* forthcoming)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Email: sliss@llrlaw.com; tfowler@llrlaw.com

*Attorneys for Plaintiffs*

TWITTER, INC.,

By its attorneys,

Dated: February 2, 2023      /s/ Eric Meckley
Eric Meckley, SBN 168181
Brian D. Berry, SBN 229893
Ashlee N. Cherry, SBN 312731
MORGAN, LEWIS, & BOCKIUS, LLP
One Market, Spear Street Tower
San Francisco, CA 94105
(415) 442-1000
Email: eric.meckley@morganlewis.com;
brian.berry@morganlewis.com
ashlee.cherry@morganlewis.com

*Attorneys for Defendant Twitter, Inc.*

## CERTIFICATE OF SERVICE

I, Eric Meckley, hereby certify that a true and accurate copy of this document was served on counsel for Plaintiffs via the CM/ECF system on February 2, 2023.

                                            */s/ Eric Meckley*
                                            Eric Meckley