UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMMANUEL CORNET, et al.,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>TWITTER, INC.,<br><br>　　　　　　Defendant. | Case No. 3:22-cv-06857-JD<br><br>**ORDER RE TRANSFER** |

In November 2022, after a buyout by Elon Musk, defendant Twitter, Inc., laid off a substantial portion of its workforce. Plaintiffs sued Twitter on behalf of themselves and a putative class of other Twitter employees alleging that the layoffs violated federal and state laws. The second amended complaint (SAC), which is the operative complaint, states that the employees are third-party beneficiaries of the merger agreement for the buyout between Musk and Twitter. *See* Dkt. No. 40 at 12; Dkt. Nos. 46-1, 46-2.

Plaintiffs allege in Count II that Twitter is liable for breach of contract for breaking its commitment in the merger agreement that, for the one-year period following the acquisition, it "would continue to provide its employees who were terminated with severance packages that were no less favorable than the severance packages that were provided to terminated employees prior to the acquisition." Dkt. No. 40 at 12; *see also* Dkt. No. 46-2 at ECF p. 16.[1] The SAC alleges other claims against Twitter for breach of contract and promissory estoppel (Counts I and III), and for violations of the federal Worker Adjustment and Retraining Notification (WARN) Act, 29 U.S.C. § 2101 *et seq.*, the California WARN Act, Cal. Lab. Code § 1400 *et seq.*, and other provisions of the California Labor Code (Counts IV, V, and VI). *See* Dkt. No. 40 at 12-14.

---

[1] Twitter's unopposed request for judicial notice of the merger agreement, obtained from a public database maintained by the Securities and Exchange Commission, Dkt. No. 46, is granted. *See* Fed. R. Evid. 201; *see also Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (courts "may take judicial notice of court filings and other matters of public record").

In prior orders, the Court directed Twitter to provide notice of the pendency of this case before asking employees to release their legal claims in connection with severance packages, and sent the claims of named plaintiffs Emmanuel Cornet, Justine De Caires, Grae Kindel, Alexis Camacho, and Jessica Pan to arbitration on an individual basis. *See Cornet v. Twitter, Inc.*, No. 3:22-cv-06857-JD, 2022 WL 18396334, at *2 (N.D. Cal. Dec. 14, 2022), Dkt. No. 42 (order re litigation notice); *Cornet v. Twitter, Inc.*, No. 3:22-cv-06857-JD, 2023 WL 187498, at *3, Dkt. No. 52 (order re arbitration). The plaintiffs whose claims were sent to arbitration "will not serve as named plaintiffs for the putative class." *Anderson v. Starbucks Corp.*, No. 20-cv-01178-JD, 2022 WL 797014, at *1 (N.D. Cal. Mar. 16, 2022).

Twitter now asks to transfer this action to the District of Delaware under 28 U.S.C. § 1404(a) on the basis of a forum-selection clause in the merger agreement. *See* Dkt. No. 45 at 1. In the alternative, Twitter asks to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(3) for improper venue, or to dismiss certain claims for failure to state a claim under Rule 12(b)(6). *See id.* at 1-2. Transfer is ordered to the District of Delaware under Section 1404(a).

## DISCUSSION

Plaintiffs seek to enforce the terms of a merger agreement that plainly directs disputes arising out of or relating to the agreement to Delaware courts, to be resolved in accordance with Delaware law. The agreement contains the following forum-selection clause:

> Each of the parties hereto hereby (i) expressly and irrevocably submits to the exclusive personal jurisdiction of the Delaware Court of Chancery, any other court of the State of Delaware or any federal court sitting in the State of Delaware in the event any dispute arises out of this Agreement or the transactions contemplated by this Agreement, . . . (iii) agrees that it will not bring any action relating to this Agreement or the transactions contemplated by this Agreement in any court other than the Delaware Court of Chancery, any other court of the State of Delaware or any federal court sitting in the State of Delaware, (iv) waives, to the fullest extent it may legally and effectively do so, any objection which it may not or hereafter have to the laying of venue of any suit, action or proceeding arising out of or relating to this Agreement.

Dkt. No. 46-2 at ECF p. 36. It also contains this choice of law provision: "This Agreement and all actions, proceedings or counterclaims (whether based on contract, tort or otherwise) arising out

2

of or relating to this Agreement, . . . shall be governed by, and construed in accordance with, the laws of the State of Delaware." *Id.* at ECF p. 34.

Forum-selection clauses "may be enforced through a motion to transfer under § 1404(a)." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tx.*, 571 U.S. 49, 59 (2013); *see also CZ Servs., Inc. v. Express Scripts Holding Co.*, 3:18-cv-04217-JD, 2018 WL 3972030, at *2 (N.D. Cal. Aug. 20, 2018). When "parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Atl. Marine*, 571 U.S. at 62. "'[E]nforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system.' For that reason, and because the overarching consideration under § 1404(a) is whether a transfer would promote 'the interest of justice,' 'a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases.'" *Id.* at 63 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (Kennedy, J., concurring)). This is not to say that a forum-selection clause will always be enforced, no matter what. *See CZ Servs.*, 2018 WL 3972030, at *2. It means that the Court, in weighing a transfer, may consider "public-interest factors only" such as the interest of justice, and not arguments about witness convenience or other "private" concerns of the litigants. *Atl. Marine*, 571 U.S. at 64.

Plaintiffs suggest that "it is premature for the Court to decide whether the third party beneficiary claim should be transferred" in that "Twitter maintains that the merger agreement includes an express disclaimer of Plaintiffs' status as third-party beneficiaries." Dkt. No. 56 at 6. That may be, but it is not the salient point. What matters for present purposes is that plaintiffs have expressly alleged that they have benefits due under the merger agreement. *See* Dkt. No. 40 at 12. Consequently, plaintiffs' claims cannot be resolved without reference to the contract, and so they cannot avoid the forum selection clause. *See also Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) ("nonsignatories have been held to arbitration clauses where the nonsignatory knowingly exploits the agreement containing the arbitration clause despite having never signed the

3

agreement") (cleaned up).[2]  This outcome makes abundant good sense.  Either plaintiffs are third-party beneficiaries of the merger agreement and should be litigating in Delaware, or their third-party beneficiary claim is foreclosed by the express terms of the agreement and will not fly in California or Delaware.

The next question concerns scope.  A forum-selection clause applies only to claims within its scope.  *See CZ Servs.*, 2018 WL 3972030, at *2; *Telesocial Inc. v. Orange S.A.*, No. 14-cv-03985-JD, 2015 WL 1927697, at *3 (N.D. Cal. Apr. 28, 2015), *aff'd*, *In re Orange, S.A.*, 818 F.3d 956 (9th Cir. 2016).  "[F]orum-selection clauses covering disputes 'relating to' a particular agreement" -- such as the forum-selection clause in this case, *see* Dkt. No. 46-2 at ECF p. 36 -- "apply to any disputes that reference the agreement or have some 'logical or causal connection' to the agreement."  *Yei A. Sun v. Adv. China Healthcare, Inc.*, 901 F.3d 1081, 1086 (9th Cir. 2018).  "The dispute need not grow out of the contract or require interpretation of the contract in order to relate to the contract."  *Id.*

Plaintiffs do not contest that the breach of contract claim alleged in Count II, which alleges that they were third-party beneficiaries to the merger agreement, falls within the scope of the forum-selection clause.  *See* Dkt. No. 56 at 7.  But they say that the additional breach of contract claim in Count I and the promissory estoppel claim alleged in Count III "stand independent from Twitter's merger agreement."  *Id.*

The complaint demonstrates otherwise.  The SAC alleges that "Twitter made various promises to employees" in an effort to "allay employees' concerns and try to prevent them from leaving Twitter."  Dkt. No. 40 ¶ 25.  One of these promises "was that, if there were layoffs, employees would receive benefits and severance at least as favorable as the benefits and severance that Twitter previously provided to employees."  *Id.* ¶ 27.  This promise was also "included in Twitter's merger agreement," *id.* ¶ 29, and "communicated by Twitter to its employees in writing,

---

[2] *Comer*'s discussion of equitable estoppel is relevant here, notwithstanding that the defendant in *Comer* was seeking to enforce an arbitration clause against the nonsignatory plaintiff.  *See Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n.4 (9th Cir. 1988) (applying an analysis of an arbitration clause's scope to a forum-selection clause "because an agreement to arbitrate is actually a specialized forum selection clause").

including through distribution of a Frequently Asked Questions (FAQs) document," *id.* ¶ 30. The "FAQs" document to which the SAC refers was included in plaintiffs' attachments to their request for litigation notice, Dkt. No. 7, and the document assures employees that the "merger agreement provides special protection for Tweep compensation and benefits for one year following the closing of the transaction." Dkt. No. 7-2 at ECF p. 19.[3] Counts I and III each fault Twitter for "repeatedly inform[ing] employees . . . that they would receive the same benefits and severance pay following Elon Musk's purchase of the company." Dkt. No. 40 at 12-13. Even if these claims might not "require interpretation of" the merger agreement, *Yei A. Sun*, 901 F.3d at 1086, the dispute that they encompass is at the very least logically connected to it, and to some extent grows out of it. Consequently, Counts I through III fall within the scope of the forum-selection clause.

That leaves plaintiffs' claims for violations of the federal and California WARN Acts, and various California Labor Code provisions (Counts IV through VI). Plaintiffs acknowledge, as they must, that the named plaintiffs "advancing those claims had their claims compelled to arbitration." Dkt. No. 56 at 9. Plaintiffs asked to "substitute in one or more plaintiffs who can advance those claims," *id.*, as they were "in the process of identifying such potential substitute lead plaintiffs," *id.* at 10 n.8. While this request was pending, they abandoned substitution and instead filed another lawsuit with a new lead plaintiff. *See* Dkt. No. 65 at 1. Plaintiffs now say that Counts IV through VI can be dismissed. *See id.* In any event, none of the remaining named plaintiffs assert that they have standing to bring the claims, and the claims are dismissed without prejudice. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) ("[A] plaintiff must demonstrate standing for each claim he seeks to press."); *Haro v. Sebelius*, 747 F.3d 1099, 1108 (9th Cir. 2014) ("In a class action, standing is satisfied if at least one named plaintiff meets the requirements.") (internal quotations and citation omitted).

All the claims that remain before the Court are subject to the forum-selection clause in the merger agreement. Plaintiffs have not identified any exceptional reasons for avoiding

---

[3] The Court may consider "documents incorporated by reference" in the complaint. *Patel v. Cuccinelli*, No. 3:17-cv-00860-JD, 2019 WL 3536332, at *2 (N.D. Cal. Aug. 2, 2019).

enforcement of the clause in this case.  Consequently, the case is transferred to the District of Delaware.[4]

**IT IS SO ORDERED.**

Dated:  April 19, 2023

JAMES DONATO
United States District Judge

---

[4] Plaintiffs invoke federal question jurisdiction under 28 U.S.C. § 1331.  *See* Dkt. No. 40 ¶ 19. The Court has now dismissed the federal claims over which it had original jurisdiction.  Even though Twitter argued for dismissal of the federal WARN Act claim, *see* Dkt. No. 45 at 11, neither party briefed (or anticipated) whether the Court should decline to exercise supplemental jurisdiction over the remaining state claims under 28 U.S.C. § 1367(c)(3).  This issue is better resolved after transfer.

6